In re Arnold GOLDZWEIG, Debtor.

WINTERLAND CONCESSIONS
COMPANY, d/b/a Winterland
Productions, Plaintiff,

v.

Arnold GOLDZWEIG, Defendant.

Bankruptcy No. 82 B 4970.
Adv. No. 82 A 1878.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 7, 1985.

Schuyler, Roche & Zwirner, Chicago, Ill., for plaintiff.

Baumgartner & Goldstein, Chicago, Ill., for debtor.

### MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This cause coming on to be heard upon the Motion For Summary Judgment, filed by Plaintiff, WINTERLAND CONCESSIONS COMPANY, represented by SCHUYLER, ROCHE & ZWIRNER, and upon the Response thereto filed by Debtor, ARNOLD GOLDZWEIG, represented by BAUMGARTNER & GOLDSTEIN, and the Court, having considered the record in this case and the pleadings on file, and having afforded the parties an opportunity for hearing, and being fully advised in the premises;

The Court Finds:

1. Debtor, ARNOLD GOLDZWEIG, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 15, 1982.

2. Plaintiff, WINTERLAND CONCESSIONS COMPANY, is a California corporation, which has its principal place of business in San Francisco, California. Debtor scheduled Plaintiff as an unsecured creditor with a $980,000.00 claim. On September 8, 1982, Plaintiff timely filed a proof of claim in these proceedings in the amount of $925,771.59.

3. On May 20, 1982, Plaintiff timely filed a Complaint to Determine Dischargeability of its claim pursuant to section 523(a)(6) of the Bankruptcy Code. 11 U.S.C. § 523(a)(6). Debtor neither answered nor sought leave to answer Plaintiff's Complaint. On October 7, 1983, Plaintiff filed the instant Motion For Summary Judgment. Debtor filed a Response to this Motion on January 9, 1984. Plaintiff filed a Reply Memorandum in support of its Motion on February 3, 1984. After notice and a hearing, the Court took this matter under advisement on May 31, 1984.

4. Plaintiff's claim against Debtor arises from a civil judgment entered by the United States District Court for the North-ern District of Illinois, Eastern Division, on November 16, 1981. In its present Motion For Summary Judgment, Plaintiff asks this Court to accord collateral estoppel effect to the findings of fact and conclusions of law contained in the district court's November 16, 1981, judgment, to the extent that such findings are relevant to Plaintiff's May 20, 1982, Complaint to Determine Dischargeability. Copies of the relevant pleadings and orders respecting the district court suit, are appended as exhibits to Plaintiff's Motion For Summary Judgment. The facts which underlie the district court litigation and judgment are essentially undisputed.

5. On October 8, 1980, Plaintiff filed a civil action against Debtor and two other defendants in the United States District Court for the Northern District of Illinois, Eastern Division, captioned *Winterland Concessions Company v. Creative Screen Design, Ltd.*, 80 C. 5389. On November 16, 1981, the district court (Honorable Hubert L. Will, District Judge) entered final judgment in favor of Plaintiff and against Debtor in the amount of $888,215.00 plus interest, costs and a $77,140.00 allowance for Plaintiff's attorney fees.

6. Prior to October 8, 1980, Plaintiff held an exclusive license to market T-shirts and jerseys emblazoned with the names, likenesses, logos and symbolic designs of the following musical performers of entertainment groups [1]:

| | |
|---|---|
| Journey | Aerosmith |
| REO Speedwagon | Cheap Trick |
| Black Sabbath | Fleetwood Mac |
| Bob Seger | AC/DC |
| Blue Oyster Cult | Heart |
| Grateful Dead | Doobie Brothers |
| Ted Nugent | Bruce Springsteen |
| Sammy Hagar | |

Ninety percent of the product manufactured by Plaintiff with reference to these performers is marketed inside concert or entertainment venues, for which privilege, Plaintiff paid $3,000,000.00 in fees to concert hall owners in the year prior to Octo-

---

1. Plaintiff amended its district court Complaint on October 15, 1980, to include these entertain-ers or entertainment groups as additional parties plaintiff in that action.

ber 8, 1980. In addition, Plaintiff paid royalties aggregating $2,500,000.00 to the above-listed entertainers for its exclusive license to market these products within the United States and Canada.

7. Prior to October 8, 1980, the Debtor, together with ALLAN GOLDZWEIG and CREATIVE SCREEN DESIGN, LTD., an Illinois corporation owned and controlled by the Goldzweigs, were engaged in the unlicensed manufacture and sale of T-shirts and jerseys bearing the names, likenesses, logos and symbolic designs of various musical groups and performers. In common parlance, this practice is referred to as "bootlegging." Debtor and the other defendants would sell these bootleg T-shirts and jerseys for resale outside concert venues throughout the country, in direct competition with Plaintiff's business operations inside those halls.

8. Plaintiff's October 8, 1980, district court complaint alleged that Debtor and the other named defendants violated the common-law right of publicity of Plaintiff and the 15 plaintiff entertainer or entertainer groups, see Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 576, 97 S.Ct. 2849, 2857, 53 L.Ed.2d 965 (1977); that the defendants' conduct constituted wilful unfair competition in violation of the Illinois Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, pars. 312, 313 (1979); and that the defendants' conduct violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). A copy of Plaintiff's October 8, 1980, complaint is attached as Exhibit A to Plaintiff's Motion For Summary Judgment.

9. On October 20, 1980, the district court entered a Preliminary Injunction against Debtor and the other defendants in the district court action, restraining them from further manufacture, distribution or sale of products bearing the name, likeness, appearance, symbols, or any colorable variation thereof, of any of the 15 plaintiff entertainers or entertainment groups. A copy of this October 20, 1980, preliminary injunction is attached to Plaintiff's Motion

For Summary Judgment as part of Exhibit B.

10. In the separate Findings of Fact and Conclusions of Law which accompanied its October 20, 1980, Preliminary Injunction, the district court recited that on October 8, 1980, it had entered a Temporary Restraining Order which enjoined the Debtor and the other defendants from (1) further manufacture or sale of bootleg T-shirts or jerseys; (2) distribution or alteration of their existing manufacturing facilities, raw material, art work, product or business records; and (3) ordered the defendants to comply with Plaintiff's discovery requests. The district court further found that Debtor and the other defendants violated the terms of the October 8, 1980, TRO, by their continuing manufacture and sales of bootleg product and by their (unsuccessful) attempt to destroy business records which evidenced these illegal sales. A copy of the district court's October 20, 1980, Findings of Fact and Conclusions of Law is attached to Plaintiff's Motion For Summary Judgment as part of Exhibit B.

11. Debtor and the other defendants filed a joint answer to Plaintiff's district court complaint on January 7, 1981, which Answer denied the material allegations of Plaintiff's complaint. A copy of this January 7, 1981, answer is attached to Plaintiff's Motion For Summary Judgment as Exhibit C.

12. On October 21, 1981, the district court entered findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 56(d), with reference to the issue of the liability of Debtor and the other defendants upon Plaintiff's complaint. The district court found that the defendants had neither sought nor obtained license or permission to manufacture or market T-shirts and jerseys bearing the names of the 15 plaintiff entertainers or entertainment groups involved in that litigation. The district court found that all defendants knew, from the date of the creation of their business enterprise, to the date of issuance of the district court's Pre-

liminary Injunction, that they "had no legal right, license or permission to produce and sell shirts bearing the names of the groups and entertainers [listed in Plaintiff's complaint]," and that the defendants knew that their production and sale of these shirts "was contrary to the legal rights of the groups and entertainers."

13. The district court further found that the Debtor, ARNOLD GOLDZWEIG, owned a corporation named Fanci That Screen Design, which corporation did business as Isreal Shirt Company. Debtor utilized this company to market bootleg T-shirts and jerseys manufactured by defendant Creative Screen Design, Ltd.

14. The district court found that Fanci That Screen Design sold bootleg T-shirts and jerseys at a Bruce Springsteen concert held on October 10 and 11, 1980, in violation of the district court's October 8, 1980, TRO. The district court expressly found that the Debtor, ARNOLD GOLDZWEIG, knew of the October 10–11, 1980, sales, and that "he made no effort to stop them." A copy of the district court's October 23, 1981, Order is attached to Plaintiff's Motion For Summary Judgment as Exhibit D.

15. On November 16, 1981, the district court entered judgment in favor of Plaintiff and against Debtor and defendant, ALLEN GOLDZWEIG, jointly and severally, in the amount of $825,612.00, representing Plaintiff's trebled actual damages. In addition, the district court entered judgment against the Debtor, individually, in the amount of $62,603.00, representing Debtor's profits from the resale of bootleg T-shirts and jerseys through his Fanci That Screen Design business. This judgment also allowed Plaintiff pre-judgment interest, costs, and its attorney fees. A copy of this November 16, 1981, judgment order is attached to Plaintiff's Motion For Summary Judgment as part of Exhibit E.

16. On November 16, 1981, the district court entered a separate order which permanently enjoined Debtor and ALLEN GOLDZWEIG, their agents, officers, servants, employees and attorneys, and all persons in active concert and participation with them, from manufacturing, distributing, selling, holding for sale, offering for sale or advertising, without authorization, any T-shirts, jerseys or other upper body garments bearing the name and/or likeness of any of the fifteen entertainers or entertainment groups named in Plaintiff's complaint. A copy of this November 16, 1981, injunction order is attached to Plaintiff's Motion For Summary Judgment as part of Exhibit E.

17. The district court issued findings of fact and conclusions of law on November 16, 1981, which accompanied its judgment and injunction orders of that date. The court found that Plaintiff was entitled to recover damages from Debtor and defendant, ALLEN GOLDZWEIG, for violation of its common law right of publicity and for violation of section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

18. The district court's November 16, 1981, findings concluded that Plaintiff was entitled to recover from Debtor and ALLEN GOLDZWEIG its actual damages of $275,204, and that it had discretion under the Lanham Act to treble those damages upon its finding of wilful and intentional infringement, undertaken by Debtor and ALLEN GOLDZWEIG, with full knowledge of the rights of Plaintiff and the plaintiff entertainers and entertainment groups which they had violated.

19. The district court's November 16, 1981, findings of fact and conclusions of law contained the following express finding respecting the mental state of the Debtor in connection with his violation of the Lanham Act:

> The defendants' conduct in this case was intentional and wilful; each knew that what they were doing was illegal. Section 35 of the Lanham Act contemplates trebling in such a situation, and the actual damages established here, i.e., the sum of $275,204, will, under the discretion granted this Court by the statute, be trebled. Accordingly, judgment will be entered in favor of the plaintiffs and against Arnold Goldzweig and Allan

Goldzweig, jointly and severally as joint tortfeasors, in the amount of $825,612.00.

20. The district court further found, on November 16, 1981, that Plaintiff was entitled to recover from Debtor, individually, the $62,603.00 profit earned by Debtor in connection with his resale of bootleg T-shirts and jerseys at concert venues respecting the fifteen named entertainers or entertainment groups through the instrumentality of Fanci That Screen Design. This allowance respecting Debtor's profits was not trebled by the district court, in light of the trebling of its additional award of Plaintiff's actual damages.

21. The district court further found, on November 16, 1981, that it had discretion under Section 35 of the Lanham Act to grant an allowance of attorney fees in cases in which the conduct of the defendants could be described as malicious, fraudulent, deliberate and wilful. Pursuant to this section, the district court allowed Plaintiff reasonable attorney fees in the amount of $77,140.00. A copy of the district court's Findings of Fact and Conclusions of Law dated November 16, 1981, is attached to Plaintiff's Motion For Summary Judgment as part of Exhibit E.[2]

22. The January 9, 1984, Response filed by Debtor with reference to Plaintiff's Motion For Summary Judgment did not dispute the authenticity of any of the pleadings or orders entered by the district court respecting Plaintiff's October 8, 1980, complaint, which were attached as exhibits to Plaintiff's Motion For Summary Judgment.

The Court Concludes and Further Finds:

1. A motion for summary judgment made pursuant to Federal Rule of Civil Procedure 56 should be entered only when the pleadings, depositions, affidavits and admissions show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Crest Auto Supplies, Inc. v. ERO Manufacturing Co.*, 360 F.2d 896, 899–900 (7th Cir.1966).

2. A debt arising from a wilful and malicious injury by the debtor to another entity or to the property of another entity, if established and prosecuted in timely fashion, is excepted from the discharge afforded debtors in cases under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 523(a)(6). A malicious injury, for purposes of section 523(a)(6), is one which is wrongful, done without just cause or is excessive. A wilful injury, for purposes of that section, is one which is deliberately or intentionally inflicted. *Vessel v. LaBrant (In re LaBrant)*, 23 B.R. 367, 369 (Bankr. N.D.Ill.1982); *Perkins v. Scharffe (In re Scharffe)*, 40 B.R. 942, 944 (Bankr.E.D. Mich.1984); *Morales v. Tanner (In re Tanner)*, 31 B.R. 338, 339 (Bankr.S.D.Fla. 1983).

3. In cases involving the question of dischargeability of debt under section 523(a) of the Bankruptcy Code, courts are permitted to invoke the doctrine of collateral estoppel to preclude the relitigation of relevant questions of fact which were fully and finally adjudicated with reference to a party to the dischargeability complaint, in another court of competent jurisdiction. *Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *United States Life Title Insurance Co. v. Dohm (In re Dohm)*, 19 B.R. 134, 136–37 (N.D.Ill.1982); *U.S. Life Title Insurance Co. v. Wade (In re Wade)*, 26 B.R. 477, 481–82 (Bankr.N.D.Ill.1983).

4. The party which asserts collateral estoppel must provide the court with a record sufficient to establish the following criteria: (1) whether the issue sought to be concluded is the same as that involved in the prior action; (2) the issue was litigated in the prior action; (3) the issue was in fact judicially determined in the prior action; and (4) that the judgment in the prior action was dependent upon the determination made of the issue. *See e.g. Whitley v.*

---

2. The district court's November 16, 1981, Findings of Fact and Conclusions of Law are reported at *Winterland Concessions Co. v. Creative Screen Design, Ltd.*, 214 U.S.P.Q. 188 (N.D.Ill. 1981).

*Seibel,* 676 F.2d 245, 248 (7th Cir.), *cert. denied,* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982).

5. The issues sought to be collaterally estopped in the instant case concern (1) the validity and amount of Plaintiff's claim against the Debtor; and (2) Debtor's wilful and malicious mental state, with reference to his actions which gave rise to Plaintiff's claim. *See e.g. Vessel v. LaBrant (In re LaBrant ),* 23 B.R. 367, 369 (Bankr.N.D.Ill. 1982).

6. The issue of the validity and amount of Plaintiff's claim against Debtor was presented in the prior district court litigation. The issue respecting Debtor's wilful and malicious mental state with reference to his actions which gave rise to Plaintiff's claim, were presented in the district court litigation with reference to that court's discretion to impose treble damages, *see Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 597 F.2d 71, 77 (5th Cir.1979) (Lanham Act damages may be trebled in cases involving deliberate and fraudulent infringement), and respecting that court's allowance of attorney fees, *Vuitton et fils, S.A. v. Crown Handbags,* 492 F.Supp. 1071, 1078 (S.D.N.Y.1979), *aff'd,* 622 F.2d 577 (2d Cir.1980) (attorney fees may be allowed under Lanham Act in exceptional cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate or wilful).

7. The issues respecting Plaintiff's claim against Debtor, and Debtor's mental state which gave rise to that claim, were litigated by Plaintiff and Debtor in the district court action.

8. The issues respecting Plaintiff's claim against Debtor, and Debtor's mental state which gave rise to that claim, were judicially determined by the district court in its November 16, 1981, orders.

As a bankruptcy judge of the United States District Court for the Northern District of Illinois, Eastern Division, the Court has authority to take judicial notice of evidentiary facts and proceedings in the district court involving the present parties.

*In re Silver,* 109 F.Supp. 200, 204 (N.D.Ill.), *aff'd, Reeser v. Silver (In re Silver ),* 204 F.2d 259 (7th Cir.1953). The Court takes judicial notice of the evidentiary facts in the record and of the proceedings in the case of *Winterland Concessions Co. et al. v. Creative Screen Design, Ltd., et al.,* 80 C 5389. In addition to the evidentiary matters set forth in this Memorandum Opinion and Order, the Court takes judicial notice that Debtor filed notice of appeal from the district court's November 16, 1981, judgment on November 24, 1981. On April 27, 1982, Debtor's appeal of that matter was dismissed by the Seventh Circuit Court of Appeals for want of prosecution. The district court's November 16, 1981, orders constituted final orders and the Debtor is bound by the provisions of those orders.

9. The district court's November 16, 1981, judgment was dependant upon its adjudication of the validity of Plaintiff's claim against Debtor. The district court's allowance to Plaintiff of treble actual damages and counsel fees under the Lanham Act was expressly dependent upon the court's finding that Debtor's violation of Plaintiff's rights under the Lanham Act, was wilful and malicious.

10. Plaintiff has provided this Court with a sufficient record upon which to accord collateral estoppel effect to the district court's November 16, 1981, judgment. The application of collateral estoppel bars the relitigation of fact questions respecting the extent and validity of Plaintiff's claim against Debtor, and respecting Debtor's mental state which gave rise to this liability. There is no genuine issue of material fact in this record with reference to the factual allegations of Plaintiff's Complaint to Determine Dischargeability. Plaintiff is entitled to summary judgment upon its dischargeability complaint as a matter of law.

11. This cause constitutes a core proceeding. 28 U.S.C. § 157.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion For Summary Judgment filed by Plaintiff, WINTERLAND CONCESSIONS COMPA-

NY, upon its Complaint To Determine Dischargeability against Debtor, ARNOLD GOLDZWEIG, be, and the same is hereby sustained.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be, and the same is hereby entered in favor of Plaintiff, WINTERLAND CONCESSIONS COMPANY, and against Debtor, ARNOLD GOLDZWEIG, upon Plaintiff's Complaint To Determine Dischargeability in the amount of $965,355.00 plus the costs and interest allowed in the district court litigation involving these parties captioned *Winterland Concessions Co. v. Creative Screen Design, Ltd.*, 80 C 5389, and costs of the present suit; and that such debt is nondischargeable under sections 727, 1141(d)(2) and 1328(b) of title 11 of the United States Code.