**In re David E. BARLOW and Maria E. Barlow, Debtors.**

**HER, Inc., et al., Plaintiff**

v.

**David E. Barlow, Defendant.**

**Bankruptcy No. 11–52415.**
**Adversary No. 11–2445.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

Sept. 26, 2012.

Bradley K. Baker, Columbus, OH, for Plaintiffs.

Michael T. Gunner, Hillard, OH, for Defendant.

## *MEMORANDUM OPINION ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

The issue before the Court is whether a debt owed by David E. Barlow ("Barlow") arising from a federal district court's award of statutory damages and attorneys' fees to the targets of his "cybersquatting" activity constitutes a nondischargeable debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Cybersquatting includes the act of registering or using a domain name that is identical or confusingly similar to another entity's trademark or service mark (or personal name that is protected as a mark) with the bad faith intent of making a profit. In 1999, Congress enacted the Anticybersquatting Consumer Protection Act ("ACPA") in order "to curb the proliferation" of the practice, which has been described as "the Internet version of a land grab." *Audi AG v. D'Amato,* 469 F.3d 534, 548 (6th Cir.2006) (internal quo-

tation marks omitted). The United States District Court for the Southern District of Ohio ("District Court") has held Barlow— the defendant in this adversary proceeding and one of the debtors in the underlying Chapter 7 bankruptcy case—liable for cybersquatting under a provision of the ACPA that is codified at 15 U.S.C. § 1125(d) [1] and for infringement of federally registered service marks under § 32 of the Lanham Act, 15 U.S.C. § 1114(1). *See HER, Inc. v. RE/MAX First Choice, LLC,* No. 2:06–CV–492, slip op. at 3 (S.D.Ohio Dec. 1, 2011) ("District Court Opinion").[2] The District Court awarded the plaintiffs—HER, Inc. ("HER"), Real Living, Inc., Harley E. Rouda, Jr., Harley E. Rouda, Sr. and Kaira Sturdivant Rouda (collectively, "Plaintiffs")—a judgment against Barlow consisting of statutory damages in the amount of $120,000, attorneys' fees in the amount of $172,356, and costs incurred (collectively, "Debt"). *See* District Ct. Op. at 3–4.

The Plaintiffs commenced this adversary proceeding seeking to obtain a declaration that the Debt is nondischargeable under § 523(a)(2) and (a)(6) and that Barlow is not entitled to receive a Chapter 7 discharge. Pending before the Court is the Motion, as well as the response to the Motion filed by Barlow ("Response") (Doc. 15) and the Plaintiffs' reply (Doc. 16) to the Response. For the reasons explained below, the Court concludes that the Plaintiffs are entitled to summary judgment on their § 523(a)(6) nondischargeability claim.[3]

---

**1.** Under this section of the ACPA, which is entitled "Cyberpiracy prevention":

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark. . . .

(B)(ii) Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

15 U.S.C. § 1125(d)(1)(A) & (B)(ii).

**2.** A copy of the District Court Opinion is attached as Exhibit A to the Plaintiffs' motion for summary judgment ("Motion") (Doc. 13). The first named defendant in the District Court Opinion, RE/MAX First Choice, LLC ("RE/MAX"), is an Ohio limited liability company operated by Barlow. As used in the District Court Opinion, the term "Defendants" means Barlow and RE/MAX. It bears noting that the well-known real estate company RE/MAX International, Inc. ("RE/MAX International") (now known as RE/MAX, LLC, a Delaware limited liability company), was not a defendant in the District Court action. In fact, RE/MAX International itself commenced a separate adversary proceeding against Barlow in one of his earlier bankruptcy cases. Pursuant to an agreed order resolving that adversary proceeding, Barlow (whose franchise agreement with RE/MAX International was terminated in January 2008) was required to transfer certain domain names to RE/MAX International, and RE/MAX International was granted "an allowed claim . . . in the amount of $120,000.00 of which $20,000.00 shall be a non-dischargeable debt. . . ." *See* Ex. 1 to the Joint Notice of Agreed Order Determining that Certain Debt Is Non–Dischargeable (Doc. 36 in Barlow's current bankruptcy case, Case No. 11–52415).

**3.** The Plaintiffs also are seeking summary judgment on their claim that the Debt is nondischargeable under 11 U.S.C. § 523(a)(2). In light of the Court's ruling under § 523(a)(6), the Plaintiffs' claim under § 523(a)(2) is no longer of practical significance and therefore is moot. *See Hardesty v. U.S. Bank, N.A. (In re Schmidt),* 445 B.R. 865, 868 (Bankr.S.D.Ohio 2011) (citing *Finstad v.*

## II. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III. Procedural Background

After Barlow commenced his current bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code,[4] the Plaintiffs filed a motion for relief from the automatic stay to request that the District Court issue the District Court Opinion (Doc. 20) ("Stay Relief Motion").[5] In the Stay Relief Motion, the Plaintiffs explained that the District Court had issued a prior opinion and order ("Prior Opinion") awarding them statutory damages and attorneys' fees based on the same activities that are the subject of the District Court Opinion; that the Prior Opinion was issued during the pendency of a Chapter 11 case previously commenced by Barlow; and that this potentially rendered the Prior Opinion voidable because its issuance—along with the original judgment establishing the Debt—arguably constituted a technical violation of the automatic stay even though Barlow had not provided notice of the bankruptcy case to the Plaintiffs or to the District Court.[6] *See* Stay Relief Mot. at 2. The Court entered an agreed order granting the requested relief from the automatic stay.

---

*Florida, Dep't of Bus. & Prof'l Regulation*, 295 Fed.Appx. 352, 353 (11th Cir.2008) ("A complaint becomes moot when it no longer presents a 'live' controversy or a ruling on the issues would have no practical significance.")). The Plaintiffs are not seeking summary judgment on their request that Barlow be denied a discharge under 11 U.S.C. § 727(a)(4). That request remains for later determination.

4. The other debtor in this bankruptcy case, Maria E. Barlow, has received a Chapter 7 discharge and is not a defendant in this adversary proceeding.

5. References to documents filed in Barlow's current bankruptcy case will be designated as "Doc. ___." and references to documents filed in this adversary proceeding will be designated as "Adv. Doc.___."

6. By way of background, the Plaintiffs commenced their lawsuit against Barlow and his company in the Franklin County Court of Common Pleas. It was removed by Barlow to the District Court based on federal question jurisdiction. *See* Doc. 2 in District Court Case No. 2:06–CV–492 ("District Court Case"). After the Plaintiffs prevailed on the issue of liability under the ACPA and § 32 of the Lanham Act, the District Court authorized them to file a motion for attorneys' fees and costs. *See* District Court Case Doc. 65 (also attached as Exhibit B to the Plaintiffs' complaint in this adversary proceeding). Before the Plaintiffs filed that motion, Barlow, on May 26, 2008, commenced a Chapter 13 bankruptcy case (Case No. 08–54933) and, on June 17, 2008, filed a suggestion of stay in the District Court. *See* District Court Case Doc. 68. As a result, the District Court entered an order administratively closing the lawsuit, subject to reopening following the filing of an appropriate motion by an interested party. *See* District Court Case Doc. 69. After this Court dismissed Barlow's Chapter 13 case, the Plaintiffs filed a motion to reopen the lawsuit against Barlow, which the District Court granted on March 27, 2009. *See* District Court Case Doc. 70 & 71. On May 7, 2009, Barlow commenced a Chapter 11 case (Case No. 09–55130), but this time he did not file a suggestion of stay with the District Court. He also failed to include the Plaintiffs on the list of creditors to be provided notice of the Chapter 11 filing. Unaware of the Chapter 11 case, on May 20, 2009, the Plaintiffs filed a motion for statutory damages and attorneys' fees, *see* District Court Case Doc. 73, and, on December 10, 2009, the District Court entered the Prior Opinion, which is Doc. 75 in the District Court Case. This Court entered an order dismissing Barlow's Chapter 11 case on motion of the United States of America based on his delinquency in paying postpetition federal tax obligations. *See* Doc. 127 in Case No. 09–55130.

The Plaintiffs filed their complaint commencing this adversary proceeding (Adv. Doc. 1) before the District Court Opinion was issued, and Barlow filed an answer in which he took the position that the Prior Opinion was void because it was entered while his Chapter 11 case was pending. *See* Adv. Doc. 3 ¶ 20. Thereafter, pursuant to the relief from stay granted by this Court, the District Court issued the District Court Opinion, stating that it superseded and replaced the Prior Opinion. *See* District Ct. Op. at 1 n. 1. Following a pretrial conference, this Court entered an agreed order establishing a briefing schedule on the issues of whether the District Court Opinion "contains findings of fact necessary for the Court to find, as a matter of law, that there was fraud, misrepresentation or a willful and malicious injury" and whether the District Court Opinion "has preclusive effect under 11 U.S.C. § 523(a)(2) and (6)." Adv. Doc. 8 at 2. The Plaintiffs then filed the Motion.

## IV. Undisputed Facts

On May 2, 2008, the District Court entered an opinion and order ("Liability Opinion") (Compl., Ex. B) finding that the Plaintiffs were entitled to judgment on certain of their claims. According to the Liability Opinion, Barlow opposed the Plaintiffs' request for judgment and sought judgment on a counterclaim, which was denied by the District Court. The District Court also noted that "[b]y agreement of the parties, the record [supporting the Liability Opinion] consists of the testimony and exhibits admitted at the preliminary injunction hearing as well as the deposition of David E. Barlow." Liability Opinion at 2.[7] In the Liability Opinion, the District Court ruled in favor of the Plaintiffs on their claims for relief under the ACPA and § 32 of the Lanham Act, permanently enjoined Barlow from using domain names incorporating the Plaintiffs' personal names and registered marks and stated that the Court would "enter final Judgment following consideration of the Plaintiffs' request for statutory damages and attorneys' fees." Compl., Ex. B at 19.

It is undisputed that the District Court Opinion replaced and superseded the Prior Opinion (in which the District Court had previously awarded the Plaintiffs statutory damages and attorneys' fees) and that the District Court Opinion provides as follows:

On May 2, 2008, this Court granted Plaintiffs' request for a Permanent Injunction and precluded Defendants from using domain names incorporating Plaintiffs' personal names and registered marks. It is undisputed that Defendants are and were direct competitors with Plaintiffs.

. . . .

Barlow registered and used the internet domain name *"insiderealliving.com"* [and] an additional five domain names as follows: *"harleyroudajr.com," "harleyerouda.com," "harleyroudasr.com," "kairarouda.com,"* and *"kairasturdivantrouda.com."* (Stipulation, Doc. 9 at 2.)[8]

---

7. After Barlow filed a brief in opposition to the Plaintiffs' request for a preliminary injunction (District Court Case Doc. 18) and the Plaintiffs filed one in support (District Court Case Doc. 19), the District Court held a hearing and granted the Plaintiffs' request for a preliminary injunction. *See* District Court Case Doc. 27. The District Court later entered an order providing that "[p]er the parties' agreement, the . . . case will proceed on the written record without a trial." District Court Case Doc. 63. Barlow filed a response in opposition to the Plaintiffs' request for a judgment in which he attempted to explain the reasons for his actions. *See* District Court Case Doc. 64.

8. The Plaintiffs alleged, and Barlow admitted, that "HER created and used the domain name '*www.realliving.com*' in connection with its business" and that "HER also incorporated the REAL LIVING mark in a number of

When a user visited one of these five website domains, he or she would be diverted to the website of HER's competitor, RE/MAX. (Tr. at 23:1–24:15; Pls.' Exh. 8.) Defendants stipulated that there was traffic on the websites but did not agree as to the amount of traffic each website attracted. (Tr. at 172–174:19.)

. . . .

The Court concluded Defendants acted with a willful, intentional, malicious and bad faith intent to profit and that Barlow's website, *"www.insiderreal living.com"* was designed with a "long-term financial motive in mind." (Order, Doc. 65 at 9–13, 12.) The Court also concluded that the Defendants diverted at least some users to the website of HER's direct competitor, RE/MAX, in a manner that could harm the goodwill of Plaintiffs' marks and to achieve some commercial gain. (*Id.*)

The Court concluded that Defendants acted intentionally with a bad faith intent to profit, and willfully and deliberately violated the ACPA and § 32 of the Lanham Act. Accordingly, Plaintiffs are entitled [to] an award of statutory damages under 15 U.S.C. § 1125(d) and attorneys' fees, and costs . . . .

The ACPA authorizes a variety of remedies, including actual damages or statutory damages, attorneys' fees, injunctive relief, and transfer of the domain names. At any time before the entry of final judgment by the trial court, a plaintiff may elect to recover statutory damages in lieu of actual damages. Statutory damages, if elected, range from "not less than $1,000 and not more than $100,000" per domain name.

15 U.S.C. § 1117(d). The statutory damages provisions in the ACPA are designed to afford restitution and reparation for injury, but also to discourage wrongful conduct. . . . In this case, in their Motion for Judgment, Plaintiffs elected statutory damages.

Courts award significant statutory damages under the ACPA where a defendant willfully, intentionally and maliciously acted in bad faith with intent to profit. Courts view a violation of the ACPA as particularly flagrant when the defendant is a direct competitor of a plaintiff . . . .

In its Opinion and Order permanently enjoining Defendants in this action, the Court delayed ruling on Plaintiffs' statutory damages until briefing was completed on the issue of attorneys' fees. Subsequently, Defendant Barlow filed for bankruptcy, which caused an automatic stay of this action pursuant to 11 U.S.C. § 362(a) of the Bankruptcy Code. The Court administratively closed the case until Defendant Barlow's bankruptcy proceeding was dismissed. Thereafter, Plaintiffs briefed the issues related to their claims for statutory damages and attorneys' fees. Again, Defendants did not oppose or respond to Plaintiffs' contentions regarding damages and fees.

Here, the Court has already determined that Defendants exhibited bad faith in their intent to divert potential customers to the RE/MAX website. Defendants directly compete with Plaintiffs in the residential real estate business. Defendants acted with a bad faith intent to profit by registering and using the domain names associated with HER and its owners in an effort to divert users to

---

other marks, such as RELAX WITH REAL LIVING that is the subject of a federal registration." Compl. ¶ 19; Answer ¶ 13. The other domain names discussed in the District Court Opinion include the individual Plaintiffs' personal names, which the District Court had determined were "worthy of trademark protection." Liability Op. at 8.

the RE/MAX website. The Court found that Defendants' use of the domain names at issue could harm the goodwill of Plaintiffs' marks and was designed to achieve some commercial gain. Specifically, the Court determined that Barlow registered the website, "*www. insiderrealliving.com*" intentionally with a long-term financial motive in mind.

Indeed, Defendant Barlow admitted that he registered five of the six domain names (excluding "*insiderrealliving.com*")to "prove a point" to Plaintiffs. (Barlow II, Doc. 46 at 23:12–24.) Barlow testified that he hoped internet users would "Google" the personal names of the Plaintiffs and discover that Plaintiffs were "not smart enough" to register their own names, which ultimately would embarrass Plaintiffs among their peers and customers. (*Id.* at 51:14–20, 58:20–59:10) Barlow also conceded that he found it "funny" that Plaintiffs were "not smart enough ... to register their own names." (*Id.* at 13:6–14.) Furthermore, Barlow's website, *www.insiderrealliving.com*, revealed the contents of [an] email that criticized HER and misrepresented the character and integrity of HER management. (Plfs. Ex 13.) Further, Barlow registered numerous other domain names that incorporated the names, home addresses, and home phone numbers of certain Plaintiffs to irritate and annoy them.

The Court concludes that, as a result of Defendants' willful, deliberate, bad faith intent to profit and their willful and malicious violations of the ACPA, Plaintiffs are entitled to statutory damages in the amount of $120,000. This amount reflects statutory damages in the amount of $20,000 for each of the six (6) domain names, "*insiderrealliving.com*," "*harleyroudajr.com*," "*harleyerouda.com*," "*harleyroudasr.com*," "*kairar-ouda.com*," and "*kairasturdivantrouda.com*" Barlow knowingly registered and used with a bad-faith intent to profit and to disparage Plaintiffs, his direct competitor.

. . . .

A court may award attorneys' fees and costs to the prevailing party in a trademark infringement action in "exceptional cases," 15 U.S.C. § 1117(a). Section 1117(a) requires two inquiries: (1) whether the plaintiff was a "prevailing party," and (2) whether the case is "exceptional." *Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir.2006). Although the ACPA does not define "exceptional," the Court of Appeals for the Sixth Circuit has held that "a case is not exceptional unless 'the infringement was malicious, fraudulent, willful, or deliberate.' " *Id.* at 550 (quoting *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir.2004)). "A finding of bad faith under the ACPA does not necessarily compel a court to find 'malicious, fraudulent, willful or deliberate' conduct. However, a court would be well within its discretion in determining that bad faith under the ACPA supports finding such conduct." *Id.* at 551.

Here, this case does not present a situation where a defendant innocently registered what he imagined to be a proper domain name but later determined that his choice caused confusion among consumers. Nor is it a case where a defendant did not know and understand the potential harm the domain registration could cause to their rightful owners. To the contrary, Defendants intentionally, willfully and maliciously registered and used the domain names with a bad faith intent to profit, thereby causing harm to Plaintiffs. Defendants used domain names incorporating Plaintiffs' trade names and marks to

divert potential customers to a competitor website. Barlow testified that he registered the domain names to "prove a point" to Plaintiffs and humiliate Plaintiffs for not registering the names themselves when they claimed to be technologically savvy. Defendants registered at least seventeen domain names that incorporated either Plaintiffs' protected marks and names, or their personal information, and redirected internet users to a specific site from at least five of these seventeen domain names.

Because Defendants' actions cannot be justified as either a reasonable attempt to develop their own marks or as the result of mere confusion concerning the existence of HER's well established marks, the Court finds that Defendants acted with malicious, fraudulent, willful and deliberate intent to injur[e] Plaintiffs and concludes that an award of attorneys' fees is appropriate. *Id.* at 550. Plaintiffs retained counsel to protect and enforce their marks and names, and obtained permanent injunctive relief prohibiting the use of the domain names at issue in this case. Defendants, however, refused to voluntarily transfer the domain names, despite numerous requests. Because of Defendants' lack of cooperation, Plaintiffs' counsel sought the Court's intervention to compel the transfer of the domain names. This motion begat additional discovery and the need for further investigation. When asked in his post-mediation deposition why he refused to transfer the domain names, Barlow unabashedly stated, "they're mine." (Barlow Dep. II, at 60:12–14.) Under these circumstances, and without opposition by Defendants, the Court finds this case to be an exceptional one in which attorneys' fees are appropriate.

District Ct. Op. at 1–7. Barlow did not appeal the District Court Opinion. And in the Response he does not point to anything in the District Court's findings that demonstrates the existence of a genuine issue of material fact insofar as the Plaintiffs' § 523(a)(6) claim is concerned.

## V. Legal Analysis

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reasonable [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263, 270 (6th Cir. 2009). And a "factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.*

### B. Nondischargeability Under § 523(a)(6)

▇▇▇▇ The Plaintiffs seek a judgment that the Debt is excepted from discharge by § 523(a)(6), which provides that "[a] discharge under section 727 ... of [the Bankruptcy Code] does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

As the Court explained in *Schafer v. Rapp (In re Rapp)*, 375 B.R. 421 (Bankr. S.D.Ohio 2007):

> The terms "willful" and "malicious" are not expressly defined in the Bankruptcy Code.
>
> Because the word "willful" modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A willful injury results when the actor either desires to cause the consequences of his actions or "believes that the consequences are substantially certain to result" from his actions. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (internal quotation marks omitted). A debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.* at 465 n. 10.
>
> A person has acted "maliciously" when that person acts "in conscious disregard of his duties or without just cause or excuse." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000).... There is no requirement that the person act with ill will, spite, or animosity toward the injured party.... While willfulness and malice may often exist concurrently in the same set of facts, each is a distinct element in the § 523(a)(6) analysis; both requirements must be met to warrant a determination of nondischargeability....

*Rapp*, 375 B.R. at 436.[9] For the reasons explained below, the Court concludes that the requirements of willfulness and malice are both met here.

**9.** "The discharge exceptions are to be narrowly construed in favor of the debtor," and "[t]he party seeking the exception to discharge bears the burden of proof by a preponderance of the evidence." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (6th Cir. BAP 2004).

### 1. Willfulness

▮ Rather than seeking actual damages in the District Court Case, the Plaintiffs elected statutory damages. As a prelude to its analysis of the appropriate amount of statutory damages, the District Court stated that "[c]ourts award significant statutory damages under the ACPA where a defendant willfully, intentionally and maliciously acted in bad faith with intent to profit" and that "[c]ourts view a violation of the ACPA as particularly flagrant when the defendant is a direct competitor of a plaintiff." District Ct. Op. at 3. The District Court then proceeded to make the following findings:

> Defendants exhibited bad faith in their intent to divert potential customers to the RE/MAX website. Defendants directly compete with Plaintiffs in the residential real estate business. Defendants acted with a bad faith intent to profit by registering and using the domain names associated with HER and its owners in an effort to divert users to the RE/MAX website. The Court found that Defendants' use of the domain names at issue could harm the goodwill of Plaintiffs' marks and was designed to achieve some commercial gain. Specifically, the Court determined that Barlow registered the website, "*www.insiderrealliving.com*" intentionally with a long-term financial motive in mind.

District Ct. Op. at 4–5. Based on those findings, the District Court awarded the Plaintiffs significant statutory damages.

In addition to statutory damages, the Plaintiffs also requested attorneys' fees. The District Court explained that it had the authority to award attorneys' fees only

in "exceptional" cases. *See* District Ct. Op. at 5. In analyzing whether the Plaintiffs' lawsuit against Barlow was such a case, the District Court found that Barlow "acted with ... intent to injur[e] Plaintiffs[,]" *id.* at 6, including, as the District Court stated earlier in the opinion, by "us[ing] domain names incorporating Plaintiffs' trade names and marks to divert potential customers to a competitor website[,]" by using that website to "reveal[ ] the contents of [an] email that criticized HER and misrepresented the character and integrity of HER management" and by "knowingly register[ing] and us[ing] [certain domain names] with a bad-faith intent to profit and to disparage Plaintiffs, his direct competitor." District Ct. Op. at 2, 5.

The findings set forth above (which do not even include the District Court's express findings of willfulness) readily demonstrate that Barlow acted willfully—that he willed or desired harm to the Plaintiffs, or believed that injury to the Plaintiffs was substantially certain to occur. Here, the profit that Barlow intended for himself would have come at the Plaintiffs' expense, meaning that he had to believe that injury was substantially certain to occur as a result of his behavior. *Cf. Trantham*, 304 B.R. at 307 (holding that defendant's patent infringement constituted a willful injury for purpose of § 523(a)(6) where the defendant "could only gain if [the plaintiff] lost"). Indeed, other courts have found that the types of cybersquatting activities undertaken by Barlow satisfy § 523(a)(6)'s willfulness requirement. *See Century 21 Real Estate LLC v. Gharbi (In re Gharbi)*, 2011 WL 831706, at *9 (Bankr.W.D.Tex. Mar. 3, 2011) (holding that the willfulness requirement of § 523(a)(6) was satisfied where "Defendant's desire to continue using the websites bearing Plaintiff's names implies that Defendant believed the websites were still attracting visitors, and De-

fendant wished to use that web traffic to gain more traffic to Defendant's new website"); *Choice Hotels Int'l, Inc. v. Wright (In re Wright)*, 355 B.R. 192, 213 (Bankr. C.D.Cal.2006) (holding that the willfulness requirement of § 523(a)(6) was satisfied because "when Wright illegally used the Choice Hotels' COMFORT® marks to boost his own Internet traffic, he had actual knowledge that harm to Choice Hotels was substantially certain to occur"). Moreover, the District Court expressly found that Barlow "acted with ... willful ... intent to injur[e] Plaintiffs." *Id.* at 6.

 "The party seeking summary judgment bears the initial burden of informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Stubbins v. BAC Home Loans Servicing, LP (In re Sunnafrank)*, 456 B.R. 885, 888 (Bankr.S.D.Ohio 2011) (internal quotation marks omitted). "If the movant satisfies this burden"—as the Plaintiffs have done here—then "the nonmoving party must then assert that a fact is genuinely disputed and must support the assertion by citing to particular parts of the record." *Id.* In the Response—as well as in his preliminary pretrial statement ("Barlow Pretrial Statement") (Doc. 6), which also required Barlow to set forth any contested issues of fact—the only purported issue of fact he identified was whether his misconduct caused injury to the Plaintiffs. *See* Response at 3; Barlow Pretrial Statement at 3. And, in the Response, Barlow does not cite anything in the findings of the District Court that demonstrates the existence of a genuine issue of material fact with respect to the question of whether the Debt arises from willful misconduct on his part. The Court accordingly concludes based on its review of the summary judgment record that the element of willful-

ness—an essential component of a § 523(a)(6) nondischargeabilty claim—has been established by the Plaintiffs.

## 2. Malice

█ In analyzing whether the lawsuit against Barlow was an exceptional case that justified an award of attorneys' fees and costs, the District Court also found as follows:

> [T]his case does not present a situation where a defendant innocently registered what he imagined to be a proper domain name but later determined that his choice caused confusion among consumers. Nor is it a case where a defendant did not know and understand the potential harm the domain registration could cause to their rightful owners.... Defendants used domain names incorporating Plaintiffs' trade names and marks to divert potential customers to a competitor website. Barlow testified that he registered the domain names to "prove a point" to Plaintiffs and humiliate Plaintiffs for not registering the names themselves when they claimed to be technologically savvy. Defendants registered at least seventeen domain names that incorporated either Plaintiffs' protected marks and names, or their personal information, and redirected internet users to a specific site from at least five of these seventeen domain names.
>
> Defendants' actions cannot be justified as either a reasonable attempt to develop their own marks or as the result of mere confusion concerning the existence of HER's well established marks.... Plaintiffs retained counsel to protect and enforce their marks and names, and obtained permanent injunctive relief pro-

hibiting the use of the domain names at issue in this case. Defendants, however, refused to voluntarily transfer the domain names, despite numerous requests. Because of Defendants' lack of cooperation, Plaintiffs' counsel sought the Court's intervention to compel the transfer of the domain names. This motion begat additional discovery and the need for further investigation. When asked in his post-mediation deposition why he refused to transfer the domain names, Barlow unabashedly stated, "they're mine." (Barlow Dep. II, at 60:12–14.).

District Ct. Op. at 6–7. Those findings in and of themselves demonstrate that Barlow acted without just cause or excuse and therefore acted with malice. *See Wright,* 355 B.R. at 213 ("[T]he summary judgment evidence supports a finding that Wright had no just cause or excuse for his actions. Wright acquired the [i]nfringing domain names with the specific intent to divert consumer traffic from Choice Hotels' authorized websites despite having been informed repeatedly by Choice Hotels to cease and desist his infringement. Wright offered no evidence in the prior action to establish a 'safe harbor' defense to his violation of the ACPA, *i.e.,* that he believed, or had reasonable grounds to believe, that use of the [i]nfringing domain names constituted fair use or was otherwise lawful.").[10] Furthermore, the District Court expressly found that Barlow "maliciously registered and used [certain] domain names with a bad faith intent to profit, thereby causing harm to Plaintiffs[,]" *id.* at 3, and "acted with malicious ... intent to injur[e] Plaintiffs." *Id.* at 4.

In short, Barlow has not "produced significantly probative evidence of specific

---

**10.** As in *Wright,* the District Court could not have found that Barlow acted with bad faith intent—and thus could not have held Barlow liable under the ACPA—if the District Court had determined that Barlow "believed and

had reasonable grounds to believe that the use of the [Plaintiffs'] domain name[s] was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

facts in response to [the Motion] showing there is a genuine issue of material fact" regarding whether, for purposes of § 523(a)(6), the Debt arose from malicious conduct on his part. *Wright,* 355 B.R. at 213.

### 3. Injury

 As noted above, the only issue as to which Barlow claims a genuine dispute exists is whether his misconduct actually caused injury to the Plaintiffs. But Barlow does not point to anything in the District Court's findings that would support his contention of lack of injury and therefore has not put the issue in genuine dispute. Rather, he relies solely on a legal argument. Barlow argues that, because the Plaintiffs elected to recover statutory damages in lieu of actual damages, they have not established actual injury and therefore are not entitled to summary judgment on their § 523(a)(6) claim.[11]

This argument is not well-taken for two reasons. First, the findings of the District Court clearly show that Barlow injured the Plaintiffs in multiple ways. He cybersquatted on and infringed the Plaintiffs' marks, which constitutes injury in and of itself, *see Treadwell v. Singer (In re Singer),* 2010 WL 3732944, at *9 (D.N.J. Sept. 17, 2010) ("This Court finds the Singer's trademark infringement alone is sufficient evidence of injury for the purposes of § 523(a)(6)."); *Wright,* 355 B.R. at 212 ("Wright's cybersquatting in violation of the ACPA constituted a categorically harmful activity which necessarily caused injury to Choice Hotels within the scope of § 523(a)(6)"), and he diverted potential customers to his company's website. The District Court held that those facts estab-

lished injury. *See* District Ct. Op. at 6 ("Defendants intentionally, willfully and maliciously registered and used the domain names with a bad faith intent to profit, *thereby causing harm to Plaintiffs.* Defendants used domain names incorporating Plaintiffs' trade names and marks to divert potential customers to a competitor website.") (emphasis added). Not only that, the District Court also found that Barlow's "website, *www.insiderrealliving. com,* revealed the contents of [an] email that criticized HER and misrepresented the character and integrity of HER management[,]" which also constitutes injury. *See Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez),* 378 Fed.Appx. 610, 612 (9th Cir.2010) ("Lopez was not merely promoting his business to ESR's customers, but was simultaneously besmirching ESR's reputation—an undeniably willful action meant to cause injury to ESR and thereby establishing the willful injury prong under § 523(a)(6).").

 Second, despite the Plaintiffs' decision not to prove the extent of their actual damages, the statutory damages and attorneys' fees that the District Court awarded them constitute a debt for willful and malicious injury. *Cf. Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In *Cohen,* the Supreme Court, in construing § 523(a)(2), held that, in addition to any amount actually obtained by fraud, also nondischargeable is the "full liability traceable to that sum[,]" including any liability for items such as treble and other punitive damages, attorneys' fees and costs. *Cohen,* 523 U.S. at 219, 118 S.Ct. 1212. Parallel reasoning applies here; in addition to any part of the Debt that would have compensated the Plaintiffs for their actual injury, the full

---

**11.** Although this argument was less than clearly set forth in the Response, Barlow made the argument in his pretrial statement. *See* Barlow Pretrial Statement at 3 (stating

that one of the contested issues of law was "[w]hether statutory damages without showing of actual injury is sufficient to invoke § 523(a)(6)").

liability traceable to Barlow's willfulness and malice also is nondischargeable. *See DirecTV, Inc. v. Karpinsky,* 328 B.R. 516, 528 (Bankr.E.D.Mich.2005) (applying the reasoning of *Cohen* in holding that statutory damages and attorneys' fees awarded for satellite signal piracy were nondischargeable under § 523(a)(6)); *Star's Edge, Inc. v. Braun (In re Braun),* 327 B.R. 447, 452 (Bankr.N.D.Cal.2005) (following *Cohen's* rationale in holding that statutory damages and attorneys' fees awarded for copyright infringement were nondischargeable under § 523(a)(6)). Several other courts have held that statutory damages arising from willful and malicious injury are nondischargeable under § 523(a)(6). *See Braun,* 327 B.R. at 450–52 (discussing cases). In fact, at least two courts have so held in the context of the ACPA. *See Gharbi,* 2011 WL 831706, at *10 (holding that the statutory damages awarded for violations of the ACPA are nondischargeable under § 523(a)(6)); *Wright,* 355 B.R. at 212 (same).[12] Barlow cites no authority to the contrary.[13]

### 4. The Issue–Preclusive Effect of the District Court's Findings

 The only other argument that Barlow makes in support of his contention that the Plaintiffs are not entitled to summary judgment on their § 523(a)(6) nondischargeability claim is that the doctrine of issue preclusion does not apply to the District Court's findings of willfulness and malice because "nowhere in the requirements or element [sic] of damage [under the ACPA] is it necessary to determine willful and malicious conduct in order to prevail on an anti-cyber squatting claim." Resp. at 6.[14]

 This argument lacks merit. Now, it is true, as Barlow argues, that the District Court's express findings that he acted willfully and maliciously were not necessary to the determination of his liability for cybersquatting under the ACPA. Under that statute, a person's liability arises "if, without regard to the goods or services of the parties, that person has a bad faith intent to profit...." 15 U.S.C. § 1125(d)(1)(A). As to the defendant's state of mind, there is no mention in the ACPA of willfulness or malice, only of bad faith intent to profit. And courts are split on the issue of whether a finding of bad faith intent to profit in and of itself inevitably leads to a finding of willful and malicious injury. *Cf. Gharbi,* 2011 WL 831706,

---

**12.** In *Wright,* the bankruptcy court specifically rejected the defendant's argument that the plaintiff had not suffered injury for purposes of § 523(a)(6) merely because there was no evidence of actual damages.

**13.** In fact, the Response is so devoid of authority for Barlow's § 523(a)(6) argument that the Court would have hoped that the duties imposed by Rule 9011 of the Federal Rules of Bankruptcy Procedure would have prevented Barlow and his counsel from taking positions that, quite simply, are indefensible under the undisputed facts and existing law.

**14.** Federal law governs the issue-preclusive effect of federal court judgments in federal question cases. *See Trantham,* 304 B.R. at

305. Under the law of the Sixth Circuit, issue preclusion applies when:

> (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation,
> (2) the issue was actually litigated and decided in the prior action,
> (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,
> (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and
> (5) the party to be estopped had a full and fair opportunity to litigate the issue.

*Hammer v. I.N.S.,* 195 F.3d 836, 840 (6th Cir.1999).

at *8 ("The Court has previously disagreed with the Plaintiff's contention that a finding of bad faith under 15 U.S.C. § 1125(d) demonstrates a willful and malicious injury for the purposes of § 523(a)(6).... For the act to be willful and malicious a debtor must have acted with objective substantial certainty or subjective motive to inflict injury." (internal quotation marks omitted))[15] *with Panda Herbal Int'l, Inc. v. Luby (In re Luby)*, 438 B.R. 817, 839 (Bankr.E.D.Pa.2010) ("Bad faith and malice are essentially the same state of mind: both intend harm. So any finding of an injury caused by cyber-squatting the Plaintiffs' trade names would also constitute a willful and malicious injury under § 523(a)(6).").

[REDACTED] In the Court's view, it would be the rare situation in which a debtor who has been held liable for damages based on a bad faith intent to profit from another's trademark would not also be found to have incurred a debt for willful and malicious injury. A predicate for liability under the ACPA is an intent to profit, and the intended profit comes "by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Daimler-Chrysler v. Net Inc.*, 388 F.3d 201, 204 (6th Cir.2004). Either way, the defendant's profit comes at the expense of the plaintiff. And, as previously discussed, this means that the defendant must have believed that injury was substantially certain to occur as a result of his cybersquatting, satisfying the standard for willfulness under § 523(a)(6). *Cf. Trantham*, 304 B.R. at 307 (holding that defendant's patent infringement constituted a willful injury for purpose of § 523(a)(6) where the defen-

dant "could only gain if [the plaintiff] lost"). Furthermore, no bad faith can be found if the defendant "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful," 15 U.S.C. § 1125(d)(1)(B)(ii), and if the defendant did not have reasonable grounds to believe that his use was a fair use or otherwise lawful, then the use almost certainly would be "without just cause or excuse," satisfying the standard for malice under § 523(a)(6). It is not surprising, then, that in each of the cases of which the Court is aware in which a defendant who has been found liable under the ACPA was also made the defendant in a § 523(a)(6) nondischargeability action, the debt was held to be nondischargeable. *See Gharbi*, 2011 WL 831706, at *9; *Luby*, 438 B.R. at 839; *Wright*, 355 B.R. at 213.

The Court, though, need not decide whether a finding of bad faith under the ACPA will lead in every case to a ruling that the resulting debt is nondischargeable under § 523(a)(6), because in this particular case the District Court not only found Barlow liable under the ACPA, it awarded the Plaintiffs significant statutory damages and attorneys' fees. The District Court awarded significant statutory damages after stating that courts award such damages where a defendant "willfully, intentionally and maliciously acted in bad faith with intent to profit" and that "[c]ourts view a violation of the ACPA as particularly flagrant when the defendant is a direct competitor of a plaintiff." Similarly, the Court awarded attorneys' fees after stating that such fees are awarded only in "exceptional cases," that is, where "the infringement was malicious, fraudulent, willful, or deliberate." District Ct. Op. at

---

**15.** As discussed above, the *Gharbi* court ultimately held that statutory damages for violations of the ACPA were nondischargeable un-

der § 523(a)(6). *See Gharbi*, 2011 WL 831706, at *10.

5–6. The District Court then proceeded to make the findings on which its award of significant statutory damages and attorneys' fees hinged. Thus, those findings were necessary and essential to the award of statutory damages and attorneys' fees. *See Nguyen ex rel. U.S. v. City of Cleveland, Ohio,* 2011 WL 4634162 (N.D.Ohio Sept. 30, 2011) ("A determination is necessary or essential 'only when the final outcome hinges on it.'") (quoting *Bobby v. Bies,* 556 U.S. 825, 835, 129 S.Ct. 2145, 173 L.Ed.2d 1173 (2009)). And, as discussed above, those factual findings support the conclusion that the Debt is one for willful and malicious injury by Barlow to the Plaintiffs and their property. That would be the case even if the District Court had not made explicit findings that Barlow acted willfully and maliciously. *See Ankney v. McMillen (In re McMillen),* 2012 WL 2150339, at *7 (Bankr.N.D.Ohio 2012) ("The findings of fact made by the state court, particularly those regarding the Defendants' mental state, are of sufficient gravity so that they would, if transplanted to this adversary proceeding, sustain a determination that the Defendants' acted 'willfully' for purposes of § 523(a)(6)."); *Indo–Med Commodities, Inc. v. Wisell (In re Wisell),* 2011 WL 3607614, at *15 (Bankr.E.D.N.Y. Aug. 16, 2011) ("When applying collateral estoppel to a Section 523(a)(6) determination, the non-bankruptcy court need not have made a finding of malice *per se.* Rather the bankruptcy court can infer from the prior factual findings whether a debtor's pre-bankruptcy conduct was 'malicious' sufficient to satisfy Section 523(a)(6)."). It is all the more so given that the District Court expressly found that Barlow acted willfully and maliciously. Given the nature of Barlow's actions, there is "no reason to suspect" that the District

Court's use of the words willfully and maliciously should "be afforded a meaning separate from that required to sustain a finding of nondischargeability under § 523(a)(6)." *H. Park Partners, LLC v. Frick (In re Frick),* 427 B.R. 627, 634 (Bankr.N.D.Ohio 2010).

In sum, Barlow's argument that issue preclusion is inapplicable because it was not necessary for the District Court to make express findings of willfulness and malice is unavailing. Barlow does not argue that any of the other elements of issue preclusion are unsatisfied here, and the Court concludes that they are all met. The issue that was central to the District Court's award of significant statutory damages and attorneys' fees—Barlow's mental state—is the same as the central issue in a nondischargeability action under § 523(a)(6). *See Winterland Concessions Co. v. Goldzweig (In re Goldzweig),* 65 B.R. 63, 68 (Bankr.N.D.Ill.1985) ("The issue respecting Debtor's wilful and malicious mental state with reference to his actions which gave rise to Plaintiff's claim [under the Lanham Act], were presented in the district court litigation with reference to that court's discretion to impose treble damages and respecting that court's allowance of attorney fees") (citations omitted); *Frick,* 427 B.R. at 632 ("[B]oth the 'willful' and 'malicious' elements of § 523(a)(6) look to the mental state of the debtor. . . ."). As the District Court Opinion makes clear, the issue was actually litigated and decided in the District Court Case. As a party in the District Court Case, Barlow had a full and fair opportunity to contest the issue of his mental state and therefore is barred by the doctrine of issue preclusion from relitigating the issue here.[16]

---

**16.** As noted above, Barlow filed a response in opposition to the Plaintiffs' request for a judg-

ment, and the parties agreed that the case would proceed on the written record, includ-

## VI. Conclusion

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of the Plaintiffs on their request that the Debt be excepted from discharge under § 523(a)(6). In accordance with this memorandum opinion, the Court will enter a separate judgment in favor of the Plaintiffs on Count One, providing that the Debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). A status conference on the remaining count under 11 U.S.C. § 727(a)(4) (Count Two) will be scheduled by separate order of the Court.

**IT IS SO ORDERED.**

ing the testimony and exhibits admitted at the preliminary injunction hearing as well as Bar- low's deposition.