**IN RE: Jeffrey T. DARDINGER, Debtor.**

**Allison N. Dardinger, Plaintiff,**

v.

**Jeffrey T. Dardinger, Defendant.**

**Case No. 14–50624**
**Adv. Pro. No. 14–2129**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, **at Columbus.**

Signed April 19, 2017

Henry E. Menninger, Jr., Dale A. Stalf, Cincinnati, OH, for Plaintiff.

Michael W. Warren, Warren Law Firm, Chillicothe, OH, for Defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

John E. Hoffman, Jr., United States Bankruptcy Judge

### I. Introduction

At the time of the events giving rise to this adversary proceeding, Jeffrey T. Dardinger ("Dardinger") was the stepfather and adoptive father of the plaintiff, Allison N. Dardinger ("Allison"). Following the discovery of illicit videos of her in various stages of undress, Allison brought a civil action against Dardinger in an Ohio state court, asserting, among other causes of action, claims for assault and battery, invasion of privacy and intentional infliction of emotional distress. The state court later granted summary judgment in favor of Allison as to liability and several days later issued findings of fact and conclusions of law, stating in detail the basis for its judgment. The state court then conducted a four-day damages trial before a jury, which ended with a significant award of compensatory and punitive damages to Allison and the entry of final judgment in her favor.

In this adversary proceeding, Allison seeks a determination that the debt stemming from the state court's judgment against Dardinger arose from a willful and malicious injury and is therefore excepted from discharge by § 523(a)(6) of the Bankruptcy Code. Before the Court is Allison's motion for summary judgment (the "Motion"), by which she seeks judgment as a matter of law based on the doctrine of issue preclusion. Allison argues that the state court's findings and conclusions definitively establish that Dardinger's conduct was willful and malicious and that she is thus entitled to a declaration that the debt based on the judgment is nondischargeable under § 523(a)(6).

Dardinger disagrees. He points to the state court's entry granting Allison summary judgment on the issue of his liability, in which the state court found that by failing to timely file an answer to Allison's original complaint, Dardinger had waived his denials and affirmative defenses. Seizing on the waiver language in the entry, Dardinger maintains that, in essence, the state court granted Allison a default judgment—rather than summary judgment. And based on this premise, Dardinger argues that (1) the issue of his liability was never directly and actually litigated in state court, (2) the prior judgment therefore should not be granted preclusive effect by this Court, and (3) Allison accordingly is not entitled to a determination of nondischargeability as a matter of law.

Dardinger is mistaken for two reasons. First, the state court considered affidavits submitted by and on behalf of Allison before it·entered summary judgment in her favor. And along with its summary judgment entry the state court issued findings of fact and conclusions of law, which carefully detail the extent and nature of Dardinger's misconduct. It is therefore inaccurate to characterize the state court's summary judgment as a default judgment. Second, even if the prior judgment were properly characterized as a default—rather than summary—judgment, it would be entitled to preclusive effect in any event because it was based upon admissible evidence apart from Allison's pleadings and was accompanied by the state court's detailed findings and conclusions.

For these reasons, and as explained more fully below, the state court's judgment is entitled to preclusive effect. And based on the preclusive effect of that judgment, the Court concludes as a matter of law that Dardinger's debt to Allison is for willful and malicious injury and is there-

fore excepted from discharge by § 523(a)(6).

## II. Jurisdiction

The Court has subject matter jurisdiction to hear and determine this adversary proceeding under 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## III. Procedural and Factual Background

The events that gave rise to this adversary proceeding are, to say the least, troubling. In short, Allison and her mother—Dardinger's now ex-wife [1]—discovered that Dardinger had, on numerous occasions, surreptitiously filmed Allison while she was either partially clothed or nude. The videotaping occurred in areas of the family residence where Allison had a reasonable expectation of privacy, such as the bathroom or her bedroom. After a criminal investigation, Dardinger pleaded guilty to violating section 2907.323 of the Ohio Revised Code, which governs the illegal use of minors in nudity-oriented material.

In late December 2013, Allison filed a complaint in the Hamilton County Court of Common Pleas (the "State Court") against Dardinger for assault and battery, invasion of privacy, defamation and intentional in-

fliction of emotional distress (the "State Court Action").[2] Dardinger failed to answer Allison's initial State Court complaint and instead filed a voluntary Chapter 7 bankruptcy petition on February 4, 2014. A few months later, Allison instituted this adversary proceeding, seeking a declaration that her claim against Dardinger—which had not yet been liquidated—is nondischargeable under § 523(a)(6) of the Bankruptcy Code because the debt he owes her is for willful and malicious injury. Adv. Doc. 1.[3] Allison later sought, and obtained by agreed order, relief from the automatic stay to proceed with the State Court Action. Doc. 25. The adversary proceeding was held in abeyance pending the outcome of the State Court Action.

Back in the State Court, Allison filed an amended complaint. Acting pro se, Dardinger filed an answer and multiple counterclaims. The parties engaged in discovery and prepared for a jury trial scheduled for April 18, 2016. Pl. 1st Ex. A.[4] In December 2015, Allison served Dardinger with a set of requests for admissions (the "Admissions Request"), which sought admissions based largely on the allegations contained in her amended complaint. Pl. 2d Ex. B. Despite participating in other discovery, Def. Ex. 8, Dardinger did not

1. *See* Hamilton County Court of Common Pleas No. DR1002728; Adv. Doc. 49, Damages Trial (defined below) Tr. Vol. II at 15.

2. The State Court Action is captioned *Allison N. Dardinger v. Jeffrey T. Dardinger* and is docketed in the State Court as Case No. A1308441.

3. References to "Adv. Doc. ——" are to docket entries in this adversary proceeding, Adversary Proceeding No. 14–2129, and references to "Doc. ——" are to docket entries in Dardinger's bankruptcy case, Case No. 14–50624.

4. Along with the Motion, Allison submitted seven exhibits, labeled as Exhibits A–G, and an authenticating affidavit of her attorney,

Dale A. Stalf. Adv. Doc. 39. In addition, Allison later submitted supplemental exhibits together with a second authenticating affidavit of Attorney Stalf. A transcript of the four-day jury trial the State Court conducted on the issue of damages was filed as Adv. Doc. 49, and an additional six exhibits, consisting of documents on the State Court's docket, labeled Exhibits A–F, were filed as Adv. Doc. 50. Due to the overlap in the labeling system, the exhibits in Adv. Doc. 39 will be referred to as "Pl. 1st Ex. ——" and the exhibits in the later-filed Adv. Doc. 50 as "Pl. 2d Ex. ——." Dardinger submitted nine exhibits along with his memorandum in in opposition to the Motion. Adv. Doc. 45.

respond to the Admissions Request. Approximately two months before the trial, Allison filed a motion for summary judgment on the issue of liability, arguing that the matters set forth in the Admissions Request were deemed admitted due to Dardinger's failure to provide a timely response (by serving Allison's attorney with written answers or objections). Pl. 2d Ex. A. In addition, to support the truth of her allegations against Dardinger and detail the events that led to her lawsuit against him, Allison submitted her own affidavit and the affidavit of a Hamilton County detective Sergeant David Ausdenmoore. Pl. 2d Ex. C & D. Dardinger opposed the motion for summary judgment, arguing, among other things, that he had not received the Admissions Request. Def. Ex. 8.

On April 14, 2016, the State Court granted summary judgment in favor of Allison, finding that, by virtue of his default in answering the initial complaint, Dardinger's "denials and affirmative defenses [were] deemed waived." Pl. 2d Ex. E at 2. After "review[ing] and consider[ing] all the pertinent documents and materials submitted, [and] consider[ing] oral arguments," the State Court also issued detailed findings of fact and conclusions of law in connection with its order granting summary judgment (the "Findings and Conclusions").[5] Pl. 1st Ex. D at 1. The Findings and Conclusions of the State Court are set forth verbatim below.

### [The State Court's] Findings of Fact

1. Plaintiff Allison N. Dardinger ("Allison") was born on December 28, 1992, to her mother Amy Siefke a/k/a Amy Siefke Dardinger ("Amy").

2. In November 2010, Defendant[6] was licensed to practice medicine in the States of Ohio, Kentucky, Iowa, and Arizona, and was employed as a radiologist by, and was a principal of, Radiology Associates of Northern Kentucky. In addition, he performed work for hospitals across the Midwest, performed promotional and other work for various medical supply companies throughout the United States and was the Vice Chairman of the Radiology Department at St. Elizabeth's Hospital in Northern Kentucky.

3. On December 16, 2010, Defendant violently assaulted and battered Allison by twisting her arm and pinning her against the wall, with his other arm around her neck, while screaming obscenities in her face. Fortunately, Amy was able to intervene and prevent any serious harm to Allison. Afterward, Amy promptly filed for and obtained a civil stalking protection order against Defendant, who was then ordered by the Court to vacate the family's residence.

4. On December 28, 2010, while celebrating Allison's 18th birthday and trying to relive some of the happier moments in their lives by viewing some "home videos" that had been saved as digital video files on one of the family's home computers, Amy and Allison discovered numerous digital video files of Allison in various stages of undress and in other compromising, embarrassing, and humiliating positions.

5. Subsequently, Amy duly reported such matter to the Amberly Village Police Department, which took possession of the family's home computers and other items. Detective Sergeant David Ausdenmoore of the Regional Electronics Computer Investigation ("RECI") Sec-

---

5. The State Court's final judgment entry provides that the Findings and Conclusions "are incorporated herein by this reference." Pl. 1st Ex. G at 1.

6. In the Findings and Conclusions, the State Court refers to Dardinger as "Defendant."

tion of the Hamilton County Sheriff's Office conducted a forensic analysis of the digital files and of the video spy camera that Defendant used to surreptitiously record the videos.

6. Between about December 2009 through about October 2010, on at least thirty-seven (37) separate occasions, Defendant used a spy camera to surreptitiously video record Allison in various stages of undress in her bedroom, bathroom, and other private areas of the family's residence, and created digital video files of these recordings and stored them on the family's home computers. At least one of these videos depicted Defendant in a state of sexual arousal, demonstrating that these recordings were made, at least in part, for the purpose of Defendant's own sexual gratification.

7. Next, after Defendant learned that he was under investigation by the police for the aforesaid activities, he made numerous telephone calls and sent numerous text messages to Allison in an effort to persuade her to not cooperate with and/or lie to the police by, among other things, threatening to cut her off financially thereby making it impossible for her to continue her education. Furthermore, Defendant warned Allison that, due to his status as a respected local physician, substantial media attention would be directed to any criminal prosecution, which would effectively "ruin" the lives of Allison, Amy, and Allison's siblings.

8. On December 18, 2012, as part of a plea deal with the Hamilton County Prosecutor's Office, Defendant was charged for the above-described conduct in the Hamilton County Court of Common Pleas, in Case No. B1205948, captioned *State v. Dardinger*, with a violation of R.C. § 2907.323(A)(3)—illegal use of a minor in nudity oriented material or

performance. On January 4, 2013, Defendant pled guilty to and was duly convicted of such crime, a felony of the fifth degree. On February 5, 2013, Defendant was sentenced to three years of community control and, as a condition thereof, he was required to complete 200 hours of community service and was classified as a Tier I Sex Offender or Child–Victim Offender.

9. Shortly thereafter, Defendant violated the terms of his community control. He established a residence in Kentucky with his new girlfriend and her young children, and even traveled with them on "vacation" to Disney World in Orlando, Florida. When Ohio and Kentucky authorities became aware that Defendant was in violation of the terms of his community control, he was apprehended. On May 15, 2013, the Hamilton County Court of Common Pleas revoked all conditions of community control and sentenced Defendant to nine (9) months in jail for his crimes.

10. As Defendant had predicted, his arrest, conviction, and sentencing resulted in considerable print and media coverage and brought further unwanted and unwarranted attention, shame, and anxiety to Allison. In addition, Defendant and/or other persons at his behest posted numerous online "comments" on some news articles suggesting that Allison had fabricated the charges that had been brought against Defendant by the State of Ohio.

11. On September 12, 2013, the State Medical Board of Ohio ("Board") issued an Order permanently revoking Defendant's license to practice medicine in Ohio based upon the above-referenced conviction and the aforesaid facts. In his statement to the Board, Defendant admitted that he had made the surreptitious video recordings of Allison. Howev-

er, he told the Board that he had done so only in an effort to "record information that would encourage Amy to agree to a divorce" and that, in the process, the video recording device had "unintentionally captured" some images of Allison "undressing." The Board concluded, *inter alia*, that Defendant's conduct was "deplorable" and that "his explanation for his conduct [was] unbelievable."

## [The State Court's] Conclusions of Law

1. R.C. § 2907.08—Voyeurism—provides in pertinent part as follows:

"(B) No person, for the purpose of sexually arousing or gratifying the person's self, shall ... surreptitiously invade the privacy of another to videotape, film, photograph, [or] otherwise record upon the other person in a state of nudity ....

(C) No person, for the purpose of sexually arousing or gratifying the person's self, shall ... surreptitiously invade the privacy of another to videotape, film, photograph, otherwise record, or spy or eavesdrop upon the other person in a state of nudity if the other person is a minor."

2. R.C. § 2907.323—illegal use of minor in nudity-oriented material—provides in pertinent part as follows:

"(A) No person shall ... (1) Photograph any minor who is not the person's child or ward in a state of nudity ..., (2) ... photograph the person's minor child or ward in a state of nudity, ... [or] (3) Possess or view any material ... that shows a minor who is not the person's child or ward in a state of nudity ....

3. Defendant's willful and intentional actions constituted violations of, *inter alia*, R.C. §§ 2907.08 and 2907.323, which are punishable under Ohio law as felonies. Pursuant to a plea deal, Defen-

dant was convicted of a violation of the latter.

4. Assault is the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (10th Dist. 1993). Battery is an intentional contact with another that is harmful or offensive. *Love v. Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988).

5. Defendant's conduct on December 16, 2010, constituted an assault and battery on Allison, which proximately caused her injury and damages.

6. Defendant intentionally intruded into Allison's solitude and seclusion by, among other things, installing hidden video recording devices and surreptitiously recording Allison in various stages of dress and undress, including while Allison was nude, in her bedroom and bathroom and other parts of the family's residence where Allison had a reasonable expectation of privacy, and by thereafter creating digital video files thereof and storing them on the family's home computers. Said intrusions were wrongful and unwarranted and were done without Allison's knowledge or consent. Said intrusions were also of such a manner that would be considered outrageous by and/or highly offensive and objectionable to a person of ordinary sensibilities. Defendant's actions directly and proximately caused substantial pecuniary and other damages to Allison, as described above.

7. By invading Allison's privacy, Defendant intentionally inflicted serious emotional distress upon Allison. Defendant intended to cause Allison to suffer emotional distress and he knew, or reasonably should have known, that his actions would cause serious emotional distress

to her. Defendant's actions were extreme and outrageous, intentional and reckless, went beyond all possible bounds of decency and were of a type considered atrocious and utterly intolerable in a civilized community. The mental anguish suffered by Allison was serious and of a nature that no reasonable person could be expected to endure it and Defendant's actions were the proximate cause of Allison's injuries and substantial pecuniary and other damages to Allison as described above.

8. Defendant intentionally publicized certain matters about Allison which placed her before the public in a false light, *i.e.*, suggesting that Allison had fabricated the charges that had been brought against him. Defendant's publicizing of such matters was of such a nature that would be highly offensive to a reasonable person. Defendant had actual knowledge of the falsity of such publicized matters, and Defendant acted with reckless disregard as to the truth or falsity thereof at the time of their publication. Defendant's actions were the direct and proximate cause of substantial pecuniary and other damages to Allison.

9. Defendant made false and per se defamatory statements about Allison which reflected extremely unfavorably on her character and reputation and were published and communicated to third persons who clearly understood the defamatory nature thereof. The defamatory statements were false, unprivileged, and made with actual knowledge of their falsity and/or with reckless disregard as to the truth or falsity thereof. Defendant intentionally or recklessly acted in an extreme and outrageous manner and was malicious. Defendant's conduct caused special harm to Allison and was the direct and proximate cause

of substantial pecuniary and other damages to Allison.

10. Allison is entitled to punitive damages. Allison presented clear and convincing evidence that Defendant's actions were willful and malicious as to all of her claims for relief, including Defendant's assault and battery of Allison, Defendant's intrusion into Allison's privacy and seclusion, Defendant's intentional infliction of serious emotional distress upon Allison, Defendant's portrayal of Allison in a false light, and Defendant's defamation against Allison. Defendant's conduct demonstrated a state of mind characterized by hatred, ill will or a spirit of revenge, and exhibited a conscious disregard for the rights and safety of Allison that had a great probability of causing substantial harm. Defendant's conduct was willful and reckless.

11. Defendant is responsible for reimbursing Allison for her reasonable attorney's fees and costs in this case.

12. Allison is entitled to declaratory relief on her claims against Defendant. Allison has met her burden of proof, and the Court hereby declares as follows:

13. Defendant, without just cause or excuse, willfully and maliciously engaged in conduct that injured Allison to her pecuniary detriment;

14. Defendant violently assaulted and battered Allison, to her pecuniary detriment;

15. Defendant spied on Allison and digitally recorded her in various stages of undress, to her pecuniary detriment;

16. Defendant intentionally and knowingly publicized, or caused to be publicized, certain matters about Allison which placed her before the public in a false light, to her pecuniary detriment;

17. Defendant intentionally and knowingly made false and defamatory state-

ments about Allison which reflected extremely unfavorably on Allison's character and reputation, and the same was published and/or communicated to third persons and/or parties who clearly understood the defamatory nature thereof, to her pecuniary detriment;

18. Defendant intentionally and recklessly acted in an extreme and outrageous manner, such that Defendant knew or reasonably should have known that Allison would suffer extreme, severe and debilitating mental and emotional distress, anguish, shame, humiliation and anxiety;

19. Defendant threatened Allison should she cooperate with any criminal investigation against him; and

20. Each of Defendant's actions as aforesaid were "willful" and "malicious" within the meaning of 11 U.S.C. § 523(a)(6), to wit: (a) Defendant's conduct was willful because he caused a deliberate and intentional injury to Allison, he desired to cause the consequences of his acts and he believed that those consequences were substantially certain to result from his conduct; and (b) Defendant's conduct was malicious because he demonstrated a conscious disregard of his duties without just cause or excuse. 11 U.S.C. 523(a)(6); *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974 [140 L.Ed.2d 90](1998); *In re Kennedy*, 249 F.3d 576, 580 (6th Cir. 2001); *In re Trantham*, 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004), *citing Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986); OJI CV 315.37.

Pl. 1st Ex. D.

Having found Dardinger liable to Allison, the State Court submitted the matter to the jury to determine damages. During the damages trial (the "Damages Trial"), the jury heard evidence and the arguments of the parties over the course of four days. Dardinger fully participated in the Damages Trial, delivering opening and closing statements, testifying (both on direct and on cross-examination), and cross-examining Allison and her witnesses. Adv. Doc. 49, Damages Trial Tr. Vol. II at 5–21, 66–76, 81–190; Vol. III at 67–79, 96–97, 123–51; Vol. IV at 32–38. The jury also heard the testimony of Sergeant Ausdenmoore, Allison, Allison's maternal grandmother, Allison's neighbor, and a psychologist specializing in post-traumatic stress disorder. *See id.* Vol. II at 2 (listing the pages containing the testimony of each witness); Vol. III at 2 (same). Allison admitted 19 exhibits into evidence. *Id.* Vol. II at 3–4 (listing admitted exhibits).

The jury was instructed to accept certain facts as true as to Dardinger's liability, to decide "the amount of compensatory damages for which [Dardinger] is liable to [Allison] on each of her claims and also the amount of punitive damages to which [she] is entitled" based on the preponderance of the evidence, and to issue a verdict. Pl. 1st Ex. E at 1, 4. The jury deliberated and found that Dardinger was liable to Allison for the following damages:

| | |
|---|---:|
| **For assault and battery:** | **$19,200.00** |
| Past medical expenses: $3,200.00 | |
| Future medical expenses: $10,000.00 | |
| Past mental and physical pain and suffering: $1,000.00 | |
| Future mental and physical pain and suffering: $5,000.00 | |
| **For intrusion upon seclusion:** | **$80,000.00** |
| Past medical expenses: $13,000.00 | |
| Future medical expenses: $40,000.00 | |
| Past mental and physical pain and suffering: $4,000.00 | |
| Future mental and physical pain and suffering: $20,000.00 | |
| Additional college expenses: $3,000.00 | |
| **For intentional infliction of emotional distress:** | **$5,000.00** |
| **For false light/defamation:** | **$0.00**[7] |
| **Punitive Damages:** | **$1,850,000.00** |

*See* Pl. 1st Ex. E at 5–9. Accordingly, the jury entered a verdict for $104,200 in compensatory damages and $1,850,000 in punitive damages. Pl. 1st Ex. F. At a later hearing, the State Court heard testimony as to the reasonable attorneys' fees and costs incurred by Allison's counsel, which the State Court found amounted to $651,400 in attorneys' fees and $4,582.92 in costs. *See* Pl. 2d Ex. F; Pl. 1st Ex. G.

On May 2, 2016, the State Court entered an "Order Accepting Jury Verdict and Answers to Jury Interrogatories and Final Money and Declaratory Judgment Entry" (the "Final Judgment") (Pl. 1st Ex. G). According to the State Court, its Final Judgment, which incorporated the Findings and Conclusions by reference, was based on: "(a) the evidence presented in the summary judgment proceedings, (b) the evidence presented at the [Damages] [T]rial, . . . (c) the jury's Verdict and answers to the Jury Interrogatories, and . . . (d) the record established in the related criminal proceedings . . . ." Pl. 1st Ex. G at

1, 3. The Final Judgment awarded Allison: (1) compensatory damages of $104,200, plus prejudgment interest on this amount at the applicable statutory rates beginning on December 1, 2009 through the date of the entry of the Final Judgment; (2) punitive damages in the amount of $1,850,000; (3) attorneys' fees in the amount of $651,400; and (4) costs in the amount of $4,582.92 (collectively, the "Debt"). *Id.* at 8.

Allison filed a notice in the adversary proceeding informing this Court that the Final Judgment had been entered by the State Court. Adv. Doc. 35. Following a status conference, Allison filed the Motion (Adv. Doc. 38) along with multiple supporting exhibits (Adv. Doc. 39). Dardinger filed a response (the "Response") (Adv. Doc. 45), and Allison filed a reply (the "Reply") (Adv. Doc. 52) along with supplemental exhibits (Adv. Docs. 49 & 50).

### IV. Legal Analysis

#### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable in this

---

**7.** Although the State Court found Dardinger liable on Allison's defamation and false light claims, the jury did not award any damages based on those claims.

adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reasonable [finder of fact] could return a [judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). And "[a] factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.* "The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any which it believes demonstrate the absence of a genuine issue of material fact." *Ray's Servs., Inc. v. Cunningham (In re Cunningham)*, No. 12–3201, 2014 WL 1379136, at *2 (Bankr. N.D. Ohio Apr. 8, 2014) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### B. Section 523(a)(6)

 Allison seeks a judgment that the Debt is excepted from discharge under § 523(a)(6) of the Bankruptcy Code, which provides that an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). For an injury to be "willful," the debtor must have "desire[d] to cause the consequences of his actions or 'believe[d] that the consequences are substantially certain to result' from his actions." *Schafer v. Rapp (In re Rapp)*, 375 B.R. 421, 436 (Bankr. S.D. Ohio 2007) (quoting *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999)). And for an injury to be "malicious," the debtor must have acted "in conscious disregard of [his] duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986); *see also Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000).

### C. Issue Preclusion

 Asserting that Dardinger's conduct gave rise to a debt for willful and malicious injury, that the State Court has already made extensive factual findings detailing that conduct, and that those findings are entitled to issue-preclusive effect, Allison seeks summary judgment on her nondischargeability claim. The purpose of the issue preclusion doctrine—also known as collateral estoppel[8]—is to prevent the relitigation of issues of fact or law, necessary to the judgment, that have already been decided between the same parties. *See Wagner v. Schulte (In re Schulte)*, 385

---

**8.** As the Sixth Circuit noted in *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693 (6th Cir. 1999), the United States Supreme Court has expressed a preference for use of the terms "issue preclusion" and "claim preclusion" rather than the traditional phrases "collateral estoppel" and "res judicata." *Fordu,* 201 F.3d at 702–03 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been actually litigated and decided." *Migra,* 465 U.S. at 77 n.1, 104 S.Ct. 892.

B.R. 181, 188 (Bankr. S.D. Ohio 2008). And "[t]he doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a)." *Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).")). "Bankruptcy courts' exclusive jurisdiction over dischargeability issues does not alter this rule." *Id.* at 53. Indeed, the fact "that Congress intended bankruptcy courts to determine [issues of dischargeability] does not require the bankruptcy court to redetermine all the underlying facts." *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981).

■ Federal courts must give "the same full faith and credit" to a state court judgment as the judgment would be accorded under the laws of the state in which it was entered. 28 U.S.C. § 1738; *see also Fordu*, 201 F.3d at 703. Thus, a federal court "faced with the question of whether to give full faith and credit to a state court … judgment [must] 'consider first the law of the State in which the judgment was rendered to determine its preclusive effect.'" *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). Here, that is Ohio law.

■ Courts in Ohio give preclusive effect to prior judgments if:

1) [There is a] final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue [was] actually and directly litigated in the prior suit and [was] necessary to the final judgment; 3) The issue in the present suit [is] identical to the issue in the prior suit; [and] 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (6th Cir. BAP 2002) (quoting *Moffitt*, 252 B.R. at 921). The party seeking to invoke the doctrine of issue preclusion has the burden of establishing its applicability. *See Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522, 535 (Bankr. S.D. Ohio 2008).

In his rather disjointed Response, Dardinger "concedes that three of the prerequisites [for issue preclusion] are met" inasmuch as "[t]here was 1.) a final judgment, 2.) concerning a matter between the same parties, 3.) and that matter is now presented to the Bankruptcy Court." Resp. at 1. Yet the Final Judgment is not entitled to preclusive effect, Dardinger argues, because "the issue now before the Bankruptcy Court was not actually and necessarily litigated in [the State Court]." *Id.*

■ Dardinger is mistaken. In holding Dardinger liable on the claims for relief asserted in Allison's complaint, the State Court necessarily had to find that he engaged in certain conduct that would be deemed to be willful and malicious for purposes of § 523(a)(6). And before issuing its Findings and Conclusions, the State Court received evidence from a number of sources; it did not rely solely on the allegations contained in Allison's pleadings. Application of the settled preclusion principles discussed below makes clear that, under these circumstances, the issue now before the Court—whether the harm suffered by Allison resulted from willful and malicious conduct on Dardinger's part—was indeed actually litigated in the State Court. The State Court's Findings and Conclusions accordingly are entitled to preclusive effect, and they establish that

the Debt arises from conduct by Dardinger that was willful and malicious within the meaning of § 523(a)(6).

### 1. Actually and Directly Litigated

According to Dardinger, the State Court's summary judgment entry, which established his liability, was in actuality a default judgment entered as a result of his own "pro se errors." Adv. Doc. 45 at 2. Though Dardinger concedes that the State Court followed "proper procedure," he maintains that it "did not produce a judgment that this Court could rely on," because his liability was never actually and directly litigated there. *Id.* But this contention does not hold water. For even if the State Court's judgment is deemed to be a default judgment rather than a summary judgment, it still definitively established the willful and malicious character of Dardinger's conduct under well-established principles governing the issue-preclusive effect of default judgments in Ohio.

 A default judgment is entitled to issue preclusive effect under Ohio law if, as here, there is an "express adjudication" of the issue by the state court. *Sweeney*, 276 B.R. at 193; *Zaperach v. Beaver*, 6 Ohio App.3d 17, 451 N.E.2d 1249, 1252 (1982) ("Only if there is an express adjudication of an issue by the court in the original action, whether by default or trial, can the judgment in that action be utilized as establishing a matter as between the parties."). As the Bankruptcy Appellate Panel for the Sixth Circuit has held, a default judgment in Ohio is "expressly adjudicated" and therefore "actually litigated" for collateral estoppel purposes if two prerequisites are met:

First, the plaintiff must actually submit to the state court admissible evidence apart from his pleadings. In other words, a plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of the collateral estoppel doctrine. Second, the state court, from the evidence submitted, *must actually make findings of fact and conclusions of law* which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding. In addition, given other potential problems that may arise with applying the collateral estoppel doctrine to default judgments (e.g., due process concerns), this Court will only make such an application if the circumstances of the case would make it equitable to do so.

*Sweeney*, 276 B.R. at 193–94 (quoting *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 387 (Bankr. N.D. Ohio 1999)); *see also Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, 658 Fed.Appx. 268, 279 (6th Cir. 2016) (applying the *Robinson* and *Sweeney* test to conclude that a prior default judgment was actually litigated when the plaintiff submitted evidence and the state court made express findings). Allison has met those requirements here.

First, the Motion "does not rest on a mere unanswered complaint and a default judgment based on it." *In re Monas*, 309 B.R. 302, 307 (Bankr. N.D. Ohio 2004) (citing *Sweeney*, 276 B.R. at 193). Allison attached to the summary judgment motion she filed in State Court her own affidavit supporting the allegations made in her complaint against Dardinger, as well as the affidavit of Sergeant Ausdenmoore, which was accompanied by his forensic report from the criminal investigation.[9] Pl.

9. In his affidavit submitted to the State Court, Sergeant Ausdenmoore attested that "[a]s a result of [his] analysis, [he] determined that, during the period beginning in about December of 2009 and continuing through about October of 2010, Defendant had, on at least 37 separate occasions, used a digital video spy camera to surreptitiously video record

2d Exs. C & D. And the State Court "reviewed and considered all the pertinent documents and materials submitted, ... considered arguments of counsel, and ... applied the appropriate law" before entering summary judgment in Allison's favor. Pl. 2d Ex. E at 1; *Monas*, 309 B.R. at 307 ("[T]he state court based its judgment not only on FirstMerit's motion for default judgment but also on a memorandum, an affidavit and exhibits in support thereof."); *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 417 (Bankr. N.D. Ohio 1998) (holding that a matter was actually litigated when the plaintiff "presented her case to the court through depositions and a summary judgment motion supported by an attached memorandum" and the state court "made findings of fact and ruled on the merits of the case ...."). In fact, the State Court made clear during the Damages Trial that the mere failure of Dardinger to answer the initial complaint was not the only reason for its ruling on liability. Adv. Doc. 49, Damages Trial Tr. Vol. II at 23 (stating, in response to Dardinger's comment that judgment was granted due to his failure to respond to the initial complaint, that "there were a lot of reasons for [the State Court's] rulings.... [and] [t]here's more to it than what [Dardinger] just said"). Second, the State Court's Findings and Conclusions, which are recited above in Section III, are seven pages in length and more than "sufficiently detailed to support application of the collateral estoppel doctrine." *Sweeney*, 276 B.R. at 193.

Moreover, application of the doctrine of issue preclusion under the circumstances of this case does not raise the same due process concerns that have troubled courts in the context of a "true default judgment"—that is, a judgment entered after a defendant elects not to appear and participate in a case in any way. Allison sought summary judgment on the issue of liability after Dardinger failed to respond to certain discovery requests. But Dardinger otherwise actively participated in the litigation, both before and after summary judgment was entered. Courts assessing the preclusive effect of prior judgments have "distinguish[ed] between 'true' default judgments where the defendant failed to answer the complaint from 'penalty' default judgments after a [d]efendant had filed an answer." *Trentadue v. Zimmerman (In re Zimmerman)*, No. 15–3093, 2016 WL 929264, at *5 (Bankr. N.D. Ohio Mar. 10, 2016); *Bursack*, 65 F.3d at 54 (differentiating a "true default judgment" from a situation in which the defendant had, among other things, filed an answer and participated in discovery but failed to appear at trial and holding that, in the latter situation, the issues were actually litigated under applicable state law); *Anderson v. Fisher (In re Anderson)*, 520 B.R. 89, 95 (6th Cir. BAP 2014) (drawing a parallel to *Bursack* and affirming bankruptcy court's decision to give preclusive effect to penalty default judgment under applicable state law); *see also Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 215 (3d Cir. 1997) ("This is not a typical default judgment where a defendant neglects or elects not to participate in any manner .... To the contrary, for several

---

[Allison] .... Defendant is depicted in some of the digital files as manipulating the location and angle of the camera and turning it on or off. Several of the files also appear to depict him in a state of sexual arousal." Pl. 2d Ex. D at 2. The Sergeant's attached forensic report lists data regarding the video files found on Dardinger's computer and shows that many of the files had been renamed using rather explicit and suggestive details of their contents. Ex. B to Pl. 2d Ex. D at 2–7; *see also* Adv. Doc. 49, Damages Trial Tr. Vol. III at 114 (psychologist testifying that many of the videos "had very odd names ... that were very explicitly sexual").

months, [the defendant] participated extensively in the lawsuit."); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1204–05 (5th Cir. 1996) (distinguishing the defendant's post-answer default from a no-answer default and noting that the defendant "had the right to participate in the damages hearing and contest the extent of his culpability, even though he could not contest liability *per se*"); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1324 (11th Cir. 1995) (declining to give the defendant "a second bite at the apple" after default was entered against him for obstructive conduct).

This is not a situation in which Dardinger failed to appear and participate in the State Court Action, as is the case when a "true default judgment" is entered. To the contrary, Dardinger was actively involved in the State Court Action: He asserted counterclaims, participated in discovery and defended against Allison's motion for summary judgment. The only thing Dardinger did not do was move the State Court to reconsider its order granting summary judgment or appeal the Final Judgment. Because Dardinger took advantage of his full and fair opportunity to litigate in State Court, "the circumstances of the case ... make it equitable" to apply the doctrine of issue preclusion to the Final Judgment. *Sweeney*, 276 B.R. at 194. Further, "[a]pplying issue preclusion here [would] serve[ ] its basic purposes—'protecting the prevailing party from the expense and vexation attending multiple lawsuits, conserving judicial resources, and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Leonard v. RDLG, LLC (In re Leonard)*, 644 Fed.Appx. 612, 618 (6th Cir. 2016) (quoting *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995)). In sum, the issues decided in the State Court were actually and directly litigated.

### 2. Necessary to the Final Judgment

"[W]here the factual issues necessary for [a] dischargeability determination [are] also necessary to the state court determination, .... there is no reason to allow relitigation of [those] facts ...." *Spilman*, 656 F.2d at 228. According to Dardinger, some of the Findings and Conclusions made by the State Court were not necessary to its Final Judgment. In his Response, he points specifically to the State Court's determination that "[e]ach of [Dardinger's] actions as aforesaid were 'willful' and 'malicious' within the meaning of 11 U.S.C. 523(a)(6)." Pl. 1st Ex. D at 7. This determination was "gratuitous," Dardinger says, because the State Court "had no reason to issue a declaration of law concerning ... § 523[.]" Resp. at 1. For this reason, the Court cannot rely on the State Court's nondischargeability determination, Dardinger argues. *Id.* True enough, the State Court exceeded its bounds in making this legal ruling. *Spilman*, 656 F.2d at 227–28 (noting that when state courts "decid[e] facts not necessary to the state proceedings but only relevant to a possible future bankruptcy proceeding," they are in effect "deciding issues directly concerning dischargeability, contrary to congressional intent"). Indeed, it is well established that bankruptcy courts have exclusive jurisdiction to determine whether a particular debt should be excepted from discharge under § 523(a)(6). *Yaikian v. Yaikian (In re Yaikian)*, 508 B.R. 175, 183 (Bankr. S.D. Cal. 2014) ("Determining nondischargeability of debts [under § 523(a)(2)(A) and (6)] is ... the exclusive province of this Court ...."); *Brandenberger v. Chinnery (In re Chinnery)*, 181 B.R. 954, 964 (Bankr. W.D. Mo. 1995) ("The Bankruptcy Code confers exclusive jurisdiction on the bankruptcy court to determine dischargeability based on sections 523(a)(2), (a)(4) [and] (a)(6) ....").

An analysis of whether the Debt is excepted from discharge by § 523(a)(6) of the Bankruptcy Code, then, was not necessary to the State Court's determination that Dardinger committed assault and battery, intentionally caused Allison emotional distress, and invaded her privacy. The State Court's declaration concerning the nondischargeability of the Debt accordingly cannot be given preclusive effect by this Court.

But Dardinger's argument is a red herring, because the State Court's inclusion of a gratuitous legal determination in its Findings and Conclusions in no way negates the numerous factual findings that were well within its authority to make. The State Court did not merely characterize Dardinger's conduct as willful and malicious. Rather, it made detailed and explicit factual findings relating to the nature of Dardinger's misconduct—findings that the State Court relied on in granting Allison summary judgment and holding Dardinger liable for assault and battery, intentional infliction of emotional distress, and invasion of privacy. It is these factual determinations, along with the evidence presented at the Damages Trial, on which the jury's significant damages award was based. While the State Court's finding regarding the nondischargeability of the Debt was indeed unnecessary, that is no reason to discard its remaining factual findings. And these findings are entitled to preclusive effect because they were necessary to the Final Judgment. *HER, Inc. v. Barlow (In re Barlow)*, 478 B.R. 320, 336 (Bankr. S.D. Ohio 2012), *aff'd*, 501 B.R. 685 (6th Cir. BAP 2013) ("The District Court then proceeded to make the findings on which its award of significant statutory damages and attorneys' fees hinged. Thus, those findings were necessary and essential to the award of statutory damages and attorneys' fees.").

### 3. Identity of Issues/Nondischargeability Under § 523(a)(6)

The question remaining, then, is whether the findings the State Court necessarily made equate to a finding of willful and malicious injury such that Dardinger is precluded from contesting that the Debt is excepted from discharge by § 523(a)(6). To answer this, the Court must "look[ ] to the factual findings made in the state-court proceeding and ask[ ] whether those findings would have been sufficient to sustain a finding that [Dardinger's] actions were both 'willful' and 'malicious' within the meaning of § 523(a)(6)." *Smith v. Cornelius (In re Cornelius)*, 405 B.R. 597, 602 (Bankr. N.D. Ohio 2009); *Gonzalez v. Moffitt (In re Moffitt)*, 254 B.R. 389, 394 (Bankr. N.D. Ohio) ("[C]onducting [an identity-of-issues] analysis necessarily entails comparing the findings of fact made in the District Court case against the interpretations given to the terms 'willful' and 'malicious' under 11 U.S.C. § 523(a)(6)."), *aff'd*, 252 B.R. 916 (6th Cir. BAP 2000).

 Section 523(a)(6) of the Bankruptcy Code provides that an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Although the terms "willful" and "malicious" are not defined in the Bankruptcy Code, the courts have taken pains to explain them:

Because the word "willful" modifies the word "injury," "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A willful injury results when the actor either desires to cause the consequences of his actions or

"believes that the consequences are substantially certain to result" from his actions. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (internal quotation marks omitted). A debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.* at 465 n.10.

A person has acted "maliciously" when that person acts "in conscious disregard of his duties or without just cause or excuse." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000); *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 419 (Bankr. N.D. Ohio 1998). There is no requirement that the person act with ill will, spite, or animosity toward the injured party. *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 909 (Bankr. N.D. Ohio 1998). While willfulness and malice may often exist concurrently in the same set of facts, each is a distinct element in the § 523(a)(6) analysis; both requirements must be met to warrant a determination of nondischargeability.

*Rapp*, 375 B.R. at 436; *see also Barlow*, 478 B.R. 320 at 330. Under the unfortunate circumstances presented here—which are detailed in full by the State Court in its Findings and Conclusions—there can be no doubt that Dardinger inflicted a willful and malicious injury for purposes of § 523(a)(6).

### a. The Findings and Conclusions Establish That Dardinger's Actions Were Willful.

In entering its Final Judgment in favor of Allison on her claims for assault and battery, intentional infliction of emotional distress, and invasion of privacy (intrusion upon seclusion),[10] the State Court made express findings that Dardinger either intended to cause Allison's injuries or "believed that harm to [Allison] was substantially certain to follow." *Markowitz*, 190 F.3d at 467. The State Court found that:

- Dardinger "violently assaulted and battered [Allison], with the *specific intent to cause her injury*, by twisting her arm and pinning her against the wall, with his other arm around her neck[.]" Pl. 1st Ex. G at 3 (emphasis added).

- Dardinger's intentional intrusion upon Allison's privacy "by using a spy camera to surreptitiously video record [her] in various stages of dress and undress ... and storing [the videos] on the family's home computers. ... [was] done with the *specific intent to cause her injury* and were of such a manner that would be considered outrageous by and/or highly offensive and objectionable to a person of ordinary sensibilities." *Id.* at 3–4 (emphasis added).

- Dardinger "*intended to cause* [Allison] to suffer serious emotional distress and he *knew, or reasonably should have known*, that his actions would cause her to suffer serious emotional distress." *Id.* at 4.

The State Court accordingly determined that the wrongful acts giving rise to the Final Judgment in favor of Allison—on her claims for assault and battery, intentional infliction of emotional distress and invasion of privacy—were committed by Dardinger with specific intent to cause injury and thus were willful within the meaning of § 523(a)(6). But even absent express findings that Dardinger intended to cause injury or believed that injury was substantially

---

10. Because the jury did not award Allison damages on her false light and defamation claims, they are disregarded for purposes of this dischargeability proceeding.

certain to happen, the Court can make a finding of willfulness based both on the necessary elements of these claims and on the factual findings on which the jury award and the Final Judgment were predicated.

 Under Ohio law, "[a]n essential element of the tort of assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact." *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 614 N.E.2d 1148, 1154 (1993). And "[a] person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. Port Clinton*, 37 Ohio St.3d 98, 524 N.E.2d 166, 167 (1988). There is ample case law—including Sixth Circuit authority—holding that debts arising from assault and battery are debts for willful and malicious injury for purposes of § 523(a)(6). *Steier v. Best (In re Best)*, 109 Fed.Appx. 1, 5 (6th Cir. 2004) ("Debts arising out of these types of misconduct satisfy the willful and malicious injury standard: intentional infliction of emotional distress, malicious prosecution, conversion, assault, false arrest, intentional libel, and deliberately vandalizing the creditor's premises."); *Schulte*, 385 B.R. at 188 ("A debt arising from an assault and battery falls squarely within § 523(a)(6)'s willful-and-malicious-injury exception to discharge."); *Wilcox*, 229 B.R. at 416, 418 (holding that because "a willful act is a prerequisite to establish liability for assault and/or battery" and "Ohio's definition of willful is sufficiently analogous" to the Supreme Court's definition, "an Ohio state court's finding of willful conduct, as it pertains to an intentional tort, will collaterally estop a party from relitigating that issue in a subsequent proceeding").

Liability for intentional infliction of emotional distress similarly requires a finding that the defendant acted "willfully" for purposes of § 523(a)(6). *See Best*, 109 Fed.Appx. at 5 ("Debts arising out of [intentional infliction of emotional distress] satisfy the willful and malicious injury standard[.]"). Under Ohio law, a person is liable for intentional infliction of emotional distress if he "*intentionally* or *recklessly* causes severe emotional distress to another." *Moffitt*, 252 B.R. at 922 (emphasis added) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983), *abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007)). As the Bankruptcy Appellate Panel explained in *Moffitt*, even a finding that a defendant "recklessly" caused severe emotional distress would amount to a finding of willfulness for nondischargeability purposes:

> Under Ohio law the term reckless is used interchangeably with the terms willful and wanton. ... [R]eckless behavior is conduct that "creates an unreasonable risk of physical harm to another but also that *such risk is substantially greater than that which is necessary to make his conduct negligent.*" The definition of reckless under Ohio law, as well as the first prong of Ohio's test for intentional infliction of emotional distress, is nearly identical to the level of intent required by the Sixth Circuit in *In re Markowitz*.

*Id.* at 922–23 (internal citations omitted) (quoting *Gonzalez v. Moffitt*, No. 97–4184, 1999 WL 220126, at *2 (6th Cir. Apr. 6, 1999)). Thus, by virtue of its determination that Dardinger was liable for intentional infliction of emotional distress, the State Court necessarily found that he "willfully" injured Allison within the meaning of § 523(a)(6). *See id.* at 923 (holding that "the Bankruptcy Court correctly gave preclusive effect to the District Court order

relative to the willful component of § 523(a)(6)").

▆▆▆ Under Ohio law, a plaintiff seeking to establish liability for invasion of privacy by intruding upon seclusion must show: "(1) the area intruded on was private and (2) the intrusion was unwarranted and would be offensive or objectionable to a reasonable person." *Somogye v. Toledo Clinic, Inc.*, No. 3:11 CV 496, 2012 WL 2191279, at *16 (N.D. Ohio June 14, 2012); *Contadino v. Tilow*, 68 Ohio App.3d 463, 589 N.E.2d 48, 53 (1990). While the tort of invasion of privacy does not, by definition, require willful misconduct, the State Court's Findings and Conclusions leave no doubt that the acts by Dardinger that resulted in the imposition of liability on this claim were committed willfully. *Cf. Barlow*, 478 B.R. at 331 ("The findings set forth above ... readily demonstrate that [the defendant] acted willfully[.]"). Indeed, the Findings and Conclusions make it clear

that the video recordings in question were not innocently or unintentionally obtained by Dardinger.[11]

▆▆▆ The State Court found that Dardinger had, on numerous occasions, "surreptitiously" placed a hidden camera in his adopted daughter's bedroom and recorded Allison "in various stages of undress." *See* Pl. 1st Ex. G at 7. Dardinger then stored the resulting videos files—over 37 of them—on the family computers. *Id.* To conclude that these actions, which took place over an 11-month time period, were undertaken with anything other than the intent to cause Allison injury or with the belief that injury to her was substantially certain to occur, would strain logic beyond all reasonable bounds. Indeed, other courts presented with similar troubling fact patterns have had no difficulty concluding that the misconduct by the debtor was both willful and malicious for purposes of § 523(a)(6). *See Wilson v. Phillips (In re*

11. In the State Court Action, as well as his hearing before the medical board, Dardinger initially maintained that he did not "intentionally use a videocamera [sic] to surreptitiously video record Allison" and "did not knowingly store any videos of [her] on [his] family's home computer." *See* Def. Ex. 8 (Verified Memorandum Contra to Plaintiff's Motion for Summary Judgment). Yet Sergeant Ausdenmoore testified at the Damages Trial that several of the video files had been edited and even renamed. *See* Adv. Doc. 49, Damages Trial Tr. Vol. II at 51–65; *see also id.* Vol. III at 114 (psychologist testifying that many of the videos "had very odd names to them that were very explicitly sexual"). And in fact, Dardinger's testimony during the Damages Trial establishes that, even if the initial video recording he made of Allison was not intentionally created, he purposefully made the subsequent video recordings of her. *Id.* Vol. III at 148 (responding to an inquiry from counsel as to why he did not cease creating the recordings after he realized he captured Allison in a state of undress, Dardinger admitted that "it was a sense that I was getting away with something and doing something"). Whether the jury relied on this

testimony in issuing its verdict or the State Court did so in entering its Final Judgment is an open question. And indeed, these details were not recited in the State Court's Findings and Conclusions. But at the very least, there appears to have been evidence presented to support the State Court's ultimate finding that, contrary to his initial contention, Dardinger acted intentionally. "When assessing whether a state court judgment is entitled to preclusive effect in a dischargeability action, a bankruptcy court may review the entire record in the state court case to determine the grounds for, or the meaning of the state court's judgment or order." *Duley v. Thompson (In re Thompson)*, 528 B.R. 721, 742 (Bankr. S.D. Ohio 2015) (quoting *Cunningham*, 2014 WL 1379136, at *8)). In *Thompson*, the Court found it "difficult to understand the basis on which liability was found" because the complaint contained little detail, it appeared no evidence was submitted as to liability, and the state court's judgment contained no specific findings regarding the defendants' misconduct. Here, by contrast, after reviewing the State Court record, it is not at all difficult to understand the basis on which liability was imposed.

*Phillips)*, No. 15–60641, 2017 WL 113599, at *8 (Bankr. E.D. Tex. Jan. 9, 2017) (holding, in nondischargeability action against debtor who had surreptitiously recorded roommate in her private bedroom, that "[f]rom any reasonable person's standpoint, such actions, when taken, were substantially certain to cause harm to the Plaintiff"); *Schnolis v. Kosobud (In re Kosobud)*, No. 08–36581, 2009 WL 2524598, at *5–6 (Bankr. S.D. Tex. Aug. 13, 2009) (holding that debtor who secretly videotaped roommate in bathroom had committed a willful and malicious injury because "[t]he intentional act of invading [the plaintiff's] privacy in such an invasive and pernicious manner constitutes a per se 'willful and malicious' injury" and with such invasions, "the act itself is the injury").

### b. The Findings and Conclusions Establish That Dardinger's Actions Were Malicious.

■ "[A] person is deemed to have acted maliciously [within the meaning of § 523(a)(6)] when that person acts in conscious disregard of his duties or without just cause or excuse." *Moffitt*, 252 B.R. at 923. Here, The State Court made numerous findings establishing that Dardinger acted maliciously when he assaulted and battered Allison, when he intentionally inflicted emotional distress upon her, and when he invaded Allison's privacy. It found that Dardinger's intrusions into Allison's privacy were "wrongful and unwarranted" and that his actions with respect to Allison's emotional distress claim "were extreme and outrageous, intentional, went beyond all possible bounds of decency and were of a type considered atrocious and utterly intolerable in a civilized community." Pl. 1st Ex. G at 4. As to all of Allison's claims, the State Court further determined that Dardinger's conduct "demonstrated a state of mind characterized by hatred, ill will or a spirit of revenge, and exhibited a conscious disregard for the rights and safety of [Allison] that had a great probability of causing substantial harm." Pl. 1st Ex. D at 6; *see also* Pl. 1st Ex. G at 5. These findings compel the conclusion that Dardinger caused Allison "malicious injury."

■ Furthermore, even "in the absence of specific findings by the state court," a bankruptcy court may "properly infer … malicious and willful conduct from the state court's imposition of punitive damages." *Miller v. Grimsley (In re Grimsley)*, 449 B.R. 602, 616 (Bankr. S.D. Ohio 2011). Here, after considering the evidence presented at the Damages Trial, the jury awarded Allison $1,850,000 in punitive damages. In Ohio, "punitive damages are awarded upon a finding of actual malice." *Moffitt*, 252 B.R. at 923 (citing *Malone v. Courtyard by Marriott Ltd. P'ship*, 74 Ohio St.3d 440, 659 N.E.2d 1242, 1247 (1996)). Ohio law defines "actual malice" as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174, 1176 (1987). Unlike Ohio's definition of "actual malice," the definition of "malicious" for purposes of § 523(a)(6) does not require a showing of "hatred, illwill, or a spirit of revenge." But "such a showing would also satisfy the malicious injury element of § 523(a)(6)." *Davis v. Music (In re Music)*, No. 13–3017, 2014 WL 1089849, at *5 (Bankr. N.D. Ohio Mar. 19, 2014). For this reason, bankruptcy courts applying the doctrine of issue preclusion routinely conclude that an award of punitive damages by an Ohio state court establishes that the court has made the findings sufficient to satisfy the "malice" requirement of § 523(a)(6). *See Hoewischer v. White (In re White)*, 551 B.R. 814, 827 (Bankr. S.D. Ohio 2016) ("[T]he State Court awarded punitive damages in the

prior action, which can only be awarded if malice is found to exist. Accordingly, because the standards for malice are almost identical and the State Court determined malice was present in the prior action, [the defendant] is estopped from litigating that issue before this Court."); *Music*, 2014 WL 1089849, at *5; *S.L. Pierce Agency, Inc. v. Painter (In re Painter)*, 285 B.R. 669, 675 (Bankr. S.D. Ohio 2002); *Scott v. Hall (In re Hall)*, 98 B.R. 777, 782 (Bankr. S.D. Ohio 1989). In sum, both the State Court's Findings and Conclusions and the jury's punitive damages award definitively show that Dardinger's actions were malicious for purposes of § 523(a)(6).

### D. The Debt is Nondischargeable in Its Entirety.

Having concluded that the Final Judgment and the Findings and Conclusions on which it is based are entitled to preclusive effect, Allison is entitled to a judgment that the entire Debt is nondischargeable. This includes the compensatory damages awarded on account of that injury—$19,200 for assault and battery, $5,000 for intentional infliction of emotional distress, and $80,000 for invasion of privacy, plus the prejudgment interest awarded by the State Court—as well as any other amount traceable to or arising from this nondischargeable sum. *Cohen v. de la Cruz*, 523 U.S. 213, 219, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (holding that, in addition to any amount actually obtained by fraud, the "full liability traceable to that sum," including any liability for items such as treble and punitive damages, attorneys' fees and costs, also is nondischargeable); *Barlow*, 478 B.R. at 334 (applying *Cohen* to debt excepted from discharge by § 523(a)(6)). Because the punitive damages awarded to Allison in the amount of $1,850,000 "stem[ ] from the same 'willful and malicious injury' as [the] nondischargeable compensatory damages," they are also nondischargeable. *Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 627 (6th Cir. BAP 2000). Finally, the attorneys' fees in the amount of $651,400 and costs of $4,582.92, which the State Court already determined to be reasonable and necessary, are likewise excepted from discharge. *See, e.g., Rowe Oil, Inc. v. McCoy (In re McCoy)*, 189 B.R. 129, 136 (Bankr. N.D. Ohio 1995) ("[A]ttorneys fees flowing from a nondischargeable debt are also excepted from discharge when such fees were awarded in the judgment giving rise to the nondischargeable debt.").

### V. Conclusion

For the foregoing reasons, the Motion is **GRANTED**. The Debt is hereby excepted from discharge under 11 U.S.C. § 523(a)(6). The Court will enter a separate judgment entry in accordance with this opinion.

**IT IS SO ORDERED.**